IN the MATTER OF Gary DAILEY v. Thomas KELLY:

Thomas J. KELLY, Appellant,

v.

Jeffrey CLARK, Respondent.

Court of Appeals

*No. 92–3060. Submitted on briefs July 9, 1993.—Decided March 16, 1995.*

(Also reported in 531 N.W.2d 455.)

639

For the appellant the cause was submitted on the briefs of *Thomas J. Kelly* of *Spring Green*.

For the respondent the cause was submitted on the brief of *John A. Baxter* and *Nathan E. Novak* of *Karrmann, Buggs, Baxter & Novak* of Platteville.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. Thomas J. Kelly, plaintiff's former attorney, appeals from a judgment entered against him pursuant to § 814.025(1) and (3)(b), STATS.,[1] awarding

---

[1] Section 814.025, STATS., provides in part:

(1) If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint

the defendant costs and attorney fees incurred in this action. The trial court, the Hon. John R. Wagner presiding,[2] concluded that "[t]his action from its inception and thereafter throughout was frivolous on the part of plaintiff and plaintiff's attorney." We disagree and reverse the judgment. On remand, the trial court shall deny Clark's motion.

## DECISION

In Part I of this opinion, we consider whether Kelly "commenced" a frivolous action on his client's behalf when he drafted and filed a complaint containing allegations which he subsequently learned during discovery were not true. We conclude that he did not. An attorney has an obligation to represent his or her client zealously, which may include making some claims which are not entirely clear in the law or on the facts, at least when an action is commenced. *Stern v.*

---

commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

. . . .

(3) In order to find an action, special proceeding, counterclaim, defense or cross complaint to be frivolous under sub. (1), the court must find one or more of the following:

. . . .

(b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

[2] When this action was commenced, the Hon. William L. Reinecke presided. He was succeeded by the Hon. George S. Curry. When Judge Curry disqualified himself, the case was assigned to Judge Wagner.

*Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 235, 517 N.W.2d 658, 663 (1994).

We further conclude that in drafting the original complaint, Kelly was entitled to rely on his client's statement of the facts.[3] Kelly had no practical way to check such facts except through discovery and his client's statement of the facts was believable. Kelly acted promptly to conduct discovery and, pursuant to Judge Reinecke's decision denying defendant Jeffrey Clark's motion for summary judgment, timely filed an amended complaint which we conclude stated a claim against Clark.

In Part II, we consider whether a defendant who wrongfully refuses to make discovery as to facts alleged in the plaintiff's complaint may recover costs and attorney fees under § 814.025(1) and (3)(b), STATS., on the grounds that plaintiff's complaint alleges facts which are not true. We conclude that he may not.

In Part III, we conclude that when material facts are disputed, a party who seeks to impose a sanction on opposing counsel under § 814.025(3)(b), STATS., must have all doubts as to frivolousness resolved in an evidentiary hearing for that purpose. *See Sommer v. Carr*, 99 Wis. 2d 789, 793, 299 N.W.2d 856, 857-58 (1981); *Wengerd v. Rinehart*, 114 Wis. 2d 575, 582-83, 338 N.W.2d 861, 866 (Ct. App. 1983). In support of his motion, Clark relied entirely on the affidavit his attorney submitted. Clark did not appear personally at the hearing ordered by the trial court.

---

[3] We have held that in some circumstances, "[s]imple reliance upon one's client is not sufficient" to satisfy the "reasonable inquiry" requirement of § 802.05(1)(a), STATS. *Riley v. Isaacson*, 156 Wis. 2d 249, 259, 456 N.W.2d 619, 623 (Ct. App. 1990). However, in *Riley*, the attorney prepared an answer which alleged facts easily verified without discovery.

In Part IV, we consider whether Kelly "continued" a frivolous action when he filed a First Amended Complaint which alleged facts he argues support recovery from Clark on theories of agency, promissory estoppel, unjust enrichment and third-party beneficiary. We conclude that the facts alleged in the First Amended Complaint support recovery from Clark on several theories, including contract, and that Kelly could have reasonably believed that he could prove such facts at trial.

In Part V, we conclude that Clark and his attorney acted in bad faith in prosecuting Clark's motion for sanctions under § 814.025(3)(b), STATS., and their bad faith precludes an award in Clark's favor.

## BACKGROUND

Plaintiff Gary Dailey is a cattle dealer who sold cows to Jerry Erickson. Under cattle leases between Clark and Erickson, it was Erickson's responsibility to replace unproductive cows with "fresh" cows. According to the leases, the replacement cows belonged to Clark. The leases required that the purchase of replacement cows be approved by Clark, but it is undisputed that in practice, Clark did not enforce that requirement. However, Clark knew that Erickson purchased replacement cows from Dailey from time to time.

On July 20, 1988, Erickson purchased ten cows from Dailey, paying part of the purchase price by trading "cull" or unproductive cows. In September 1988, Clark telephoned Dailey and told him that Erickson wasn't making his payments and therefore, he was thinking about "pulling the cows out of there." Clark asked Dailey to arrange for the sale of the Erickson herd, sixty-one head of cattle. Dailey claims that he

told Clark that Erickson still owed him $6,500 for the replacement cattle and that Clark agreed to pay him this balance due from Erickson if Dailey would arrange for the sale of the Erickson herd. Kelly's partner, Paul Morrow, conducted the first interview with Dailey. The transcript of that interview shows that Dailey told Attorney Morrow that Clark had made this promise.[4]

On September 29, 1988, Clark picked up the Erickson herd from Erickson's farm to deliver to the auction. At that time, he gave Erickson and Erickson's wife a Complete Release[5] which Erickson's attorney suggested they obtain before allowing Clark to remove the herd. Erickson deposed that he believed the release obligated Clark to pay Dailey for the replacement cattle. Dailey told Attorney Morrow that when Clark

---

[4] A transcript of the client interview was introduced as Exhibit 1 at the 1992 hearing on Clark's motion for costs and attorney fees. The transcript shows that Dailey told Attorney Morrow:

[Dailey:] Our agreement was, [Clark] said I don't know nothing about where to go with them or what about trucks. If you line up the place to sell them and the trucks to move them, which I did both —

. . . .

[Dailey:] [Clark] said we'll pay you what we owe you.

. . . .

[Morrow:] Alright, Clark would pay you $6,500 out of the sale proceeds of these Erickson cattle.

[Dailey:] Right.

[5] The release read as follows:

I, Jeff Clark, do hereby fully and completely release Jerry K. Erickson and Patricia C. Erickson from any and all liability damages, claims, or losses arising out of lease of cattle.
Sept. 29, 1988

---
Jeff Clark

picked up the cattle, Erickson told Clark that he still owed Dailey $6,500 for the replacement cattle and Clark said, "that's fine, we'll pay Gary [Dailey]."

On February 28, 1990, Kelly drafted and filed the original complaint, relying on the transcript of Attorney Morrow's interview with Dailey. Kelly concedes that the complaint incorrectly alleged that Dailey sold the replacement cattle to Clark at his request. However, he claims that he corrected that error in the amended complaint he filed on Dailey's behalf August 24, 1990. We discuss further background facts as we consider the issues presented.

## I.

## DID KELLY "COMMENCE" A FRIVOLOUS ACTION?

Whether Kelly "commenced or continued" a frivolous action is a mixed question of law and fact. *Stern*, 185 Wis. 2d at 241, 517 N.W.2d at 666. What Kelly knew or should have known involves questions of fact. *Id.* We will not overturn findings of fact unless they are clearly erroneous. Section 805.17(2), STATS. However, on summary judgment, the trial court does not find facts but determines whether there are disputed, that is, genuine issues of material fact which must be tried. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). The trial court in this case departed from summary judgment methodology and resolved disputed issues of material fact in Clark's favor and adopted those findings in support of its decision granting Clark's motion for costs and fees under § 814.025(3)(b), STATS.

The original complaint alleged that "[o]n or about July 20, 1988[,] plaintiff, *at the request of the defendant*, sold 10 Holstein cows to the defendant, for lease to Jerry Erickson." (Emphasis added.) In its memorandum decision denying Clark's motion for summary judgment, entered July 3, 1990, the trial court found that this allegation was not true. However, the court stated:

> [T]he evidentiary materials in opposition to the Motion for Summary Judgment might support a judgment in favor of the plaintiff on a different cause of action. Defendant has seen fit to limit discovery by plaintiff to the cause of action pled and has filed no evidentiary matters that would raise material issues of fact as to that unpled cause of action.
>
> Because plaintiff has a right to amend [his] pleading[s] it would be unjust at this time to dismiss this cause of action because the wrong cause of action was pled. It would be equally unjust to render summary judgment on a new cause of action that was not pled. I have concluded, on the state of the record now before me, that the Motion for Summary Judgment is premature, that the plaintiff should have the right to amend pleadings which can then be responded to. Discovery can then be had as to that new cause of action and then, if appropriate, a new Motion for Summary Judgment can be brought. Any scheduling order made in the future can adequately provide for additional Motions for Summary Judgment.

Plainly, Judge Reinecke did not consider Dailey's action frivolous even though the principal allegation of the complaint was not true. He concluded that the evidentiary materials Dailey submitted in opposition to

Clark's motion for summary judgment might support a judgment against Clark.

The parties followed the scenario Judge Reinecke sketched. Kelly filed a First Amended Complaint on August 24, 1990. Clark answered, alleging that the amended complaint was frivolous and demanding judgment for his costs and attorney fees pursuant to § 814.025, STATS. On December 12, 1990, Clark moved for summary judgment. On May 8, 1991, the trial court, now presided over by Judge Wagner, granted Clark's motion. The trial court made extensive findings of fact. The court granted Clark leave to proceed on his motion for costs and attorney fees under § 814.025. By his affidavit, Clark's attorney submitted extensive materials in support of Clark's motion for costs and attorney fees, including submissions made to Judge Reinecke in support of Clark's first motion for summary judgment.

On February 6, 1992, the trial court held a hearing on Clark's motion for costs and attorney fees. Neither Clark nor Dailey appeared personally. Clark appeared by his attorney. Dailey was not represented. The trial court granted Kelly's motion to withdraw as Dailey's attorney. On February 12, 1992, the trial court entered its findings and order which granted Clark's motion and ordered Kelly to pay part of Clark's costs and attorney fees.[6]

The trial court did not have the benefit of *Stern* when it found that this action was frivolous "from its inception." We conclude that *Stern* requires a different conclusion.

---

[6] The trial court divided Clark's costs and attorney fees between Kelly and Dailey. However, judgment was entered only against Kelly; Clark released Dailey two days before the hearing.

> We . . . note that an attorney has an obligation to represent his or her client's interests zealously, and that this may include making some claims which are not entirely clear in the law or on the facts, *at least when commenced*. Thus, when a frivolous action claim is made, all doubts are resolved in favor of finding the claim nonfrivolous.

*Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663 (emphasis added).

The *Stern* court recognized that it is not always possible for an attorney to have all the facts when he or she drafts a pleading. Amended complaints are the rule, not the exception. Section 802.09(1), STATS., permits a plaintiff to amend his or her complaint as a matter of right within six months after the summons and complaint are filed.

Had Kelly persisted in the first complaint's claim that Dailey sold the replacement cattle to Clark "at [his] request," he would have "continued" a claim which was not well-grounded in fact. However, Kelly did just what Judge Reinecke suggested. He dropped the claim that Dailey sold the replacement cows to Clark at Clark's request and alleged facts which Judge Reinecke had concluded might support a claim against Clark.

Kelly was not dilatory in correcting the error in the first complaint. Kelly deposed Clark April 5, 1990. When Judge Reinecke questioned the accuracy of the allegations of the original complaint, Kelly promptly filed an amended complaint.

The trial court's conclusion that Kelly "continued" a frivolous action was based in part on Clark's warnings to Kelly that he considered the action frivolous. Such warnings may be helpful in prompting opposing counsel to take a closer look at his or her case; however,

the nature of litigation is such that each party often considers the other's position to be without merit. In *Blankenship v. Computers & Training, Inc.*, 158 Wis. 2d 702, 710, 462 N.W.2d 918, 921 (Ct. App. 1990), we said: "When conflicting versions of fact exist, a swearing match frequently results. The mere likelihood of such a match is no reason why an attorney should accept the other side's version of the facts. Conflicting versions of the facts are standard fare in litigation."

Where there are genuine issues of material fact, as here, summary judgment is not appropriate. *Grams*, 97 Wis. 2d at 338, 294 N.W.2d at 477 ("On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact."). Here, the trial court departed from summary judgment methodology and resolved disputed issues of material fact in Clark's favor. The parties spend a good deal of briefing time arguing whether the trial court erred when it granted Clark's motion for summary judgment. However, that question is not before us because Dailey did not appeal the judgment and Kelly lacks standing to appeal. However, the court's findings of fact are before us because the trial court relied on those findings when it concluded that Kelly commenced and continued a frivolous action.

Prior to the adoption of our rules of civil procedure in 1976, 67 Wis. 2d 585, a party could conduct discovery for the purpose of pleading. *See* § 887.12(6), STATS., 1973. Now, a party and his or her attorney must commence an action before conducting discovery. *See* § 804.01(1), STATS. *Stern* gives attorneys and parties reasonable latitude to "mak[e] some claims which are not entirely clear in the law or on the facts," provided

the attorney or party acts promptly to determine and clarify any unclear facts. *See* 185 Wis. 2d at 235, 517 N.W.2d at 663. Further, if in the course of an action, a party believes that the opposing party has filed a frivolous "paper," the party may challenge that paper pursuant to § 802.05(1)(a), STATS.[7] In a sense, *Stern* gives parties and attorneys a "safe harbor" in that they may file a pleading without fear of sanctions as long as they make a reasonable inquiry as to uncertain or unclear facts within a reasonable time after the pleading is filed.

This is not a case where the attorney failed to make "reasonable inquiry" into the facts before filing a pleading, motion or other paper as required by § 802.05(1)(a), STATS. *See Riley v. Isaacson*, 156 Wis. 2d 249, 456 N.W.2d 619 (Ct. App. 1990). Without discovery, Kelly had no way to verify the facts Dailey related

---

[7] Section 802.05, STATS., is *in pari materia* with § 814.025, STATS. Section 802.05(1)(a) provides that pleadings, motions and other papers must be signed by the attorney or unrepresented party and the signature constitutes a certificate that the pleading, motion or other paper is well-grounded in the facts and law or equity. Section 802.05 is patterned after Rule 11, Federal Rules of Civil Procedure. *See* LRB drafting record of 1987 Wis. Act 256, *Analysis by the Legislative Reference Bureau*, Senate Bill 550, LRB-5615/2. Rule 11 was highly controversial, particularly with respect to sanctions imposed after the fact. Rule 11 has now been amended to provide a "safe harbor" which requires a litigant to serve a motion for frivolous-"paper" sanctions on the offending party, but which may not be filed with the court unless, within twenty-one days after service of the motion, the challenged pleading is not withdrawn or appropriately corrected. FED. R. CIV. P. 11(c)(1)A and Notes of Advisory Committee on 1993 Amendments to Rules.

to his partner. Kelly could reasonably rely on those facts.

## II.

## WHAT IS THE EFFECT OF CLARK'S REFUSAL TO MAKE DISCOVERY?

Judge Reinecke alluded to the fact that Clark had chosen to limit discovery. Clark refused to produce the leases between his company and Erickson or to answer any question as to the contractual relationship between them, on the grounds that these matters were not relevant to the allegations of the original complaint. Clark's refusal was not justified because relevancy is not a ground for refusal to make discovery if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Section 804.01(2)(a), STATS. We conclude that Clark has no claim under § 814.025(3)(b), STATS., for that period between when Kelly filed the original complaint and when he filed the First Amended Complaint. In Part IV, we examine whether Kelly "continued" a frivolous action when he filed the amended complaint November 24, 1990.

## III.

## DID THE TRIAL COURT ERR WHEN IT DECIDED THE QUESTION OF FRIVOLOUSNESS ON THE BASIS OF THE SUBMISSIONS OF THE PARTIES?

We conclude that the trial court erred when it decided the question of frivolousness on the basis of the submissions of the parties by affidavit in support of and

in opposition to Clark's motion for summary judgment and his motion for costs and attorney fees under § 814.025(1) and (3)(b), STATS. In *Stern*, the court said: "We emphasize that the question of frivolousness is not determined in the same manner as motions for summary judgment or directed verdict or dismissal for failure to state a claim upon which relief can be granted." *Stern*, 185 Wis. 2d at 241 n.7, 517 N.W.2d at 666 (citing *Stoll v. Adriansen*, 122 Wis. 2d 503, 509, 362 N.W.2d 182, 186 (Ct. App. 1984)).

A motion for costs and attorney fees under § 814.025, STATS., initiates a special proceeding. *See Wengerd*, 114 Wis. 2d at 582, 338 N.W.2d at 866 ("A motion may initiate a special proceeding."). Regardless of the stage of the proceedings in the underlying action, the question of frivolousness is decided in a proceeding for that purpose.

In *Stoll*, we considered whether it was appropriate for the trial court to grant a motion for attorney fees and costs under § 814.025, STATS., even though the motion was granted after the case was submitted to the jury. 122 Wis. 2d at 509, 362 N.W.2d at 186. We noted that § 814.025(1) permits the trial court to make a determination of frivolousness "at any time during the proceedings or upon judgment." That determination may be made without an evidentiary hearing where the facts are undisputed and only a question of law remains. *Wengerd*, 114 Wis. 2d at 582-83, 338 N.W.2d at 866; *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 629, 345 N.W.2d 874, 886 (1984) ("Normally, this court would require a special and separate hearing before the trial court on the issue of frivolousness."). In *Sommer*, the court said: "If there is not

enough in the record for the trial judge to make such findings leading to a conclusion of frivolousness or its absence, *then* the trial court must conduct a hearing for the purpose of reaching such findings and resulting conclusion." 99 Wis. 2d at 793, 299 N.W.2d at 858 (emphasis added).

The trial court held a hearing but considered that the purpose of the hearing was not to hear Clark's evidence but was to give Kelly an opportunity to be heard on the court's finding that this action was frivolous. Clark did not appear to give his evidence and be cross-examined. The court did not apply the presumption of "nonfrivolousness" to Dailey's claim. This was error. *See Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663 ("[W]hen a frivolous action claim is made, all doubts are resolved in favor of finding the claim nonfrivolous.").

The facts which Clark claims show that this action is frivolous are disputed. The disputes are genuine. Clark had the burden to show in an evidentiary hearing that Dailey's amended complaint was not well-grounded in the facts or the law or equity. However, Clark did not present any evidence at the hearing but chose to rely on the affidavit he submitted in support of his motion for costs and attorney fees.

Some matters are "too grave to be decided on affidavits." *Wheeler v. Catlin*, 44 Wis. 464, 466 (1878). Imposing a sanction for commencing or continuing a frivolous action is such a matter, at least where the material facts are disputed. What the *Wheeler* court held as to demurrers applies equally to motions to impose sanctions under § 814.025, STATS.: "It involves the determination of disputed facts, and demands a

judicial trial, in which full opportunity to examine and cross-examine witnesses will be given all parties." 44 Wis. at 466. Section 814.025 is not a fee-shifting statute; costs and attorney fees awarded thereunder are sanctions for misconduct in litigation. *See* Robert D. Sundby, *Awarding Reasonable Attorney Fees Upon Frivolous Claims and Counterclaims Under § 814.025, Stats.*, 53 Wis. B. Bull. 11 *(May 1980).* Unless the facts are undisputed or the right to a hearing is waived, the party or attorney is entitled to more than a trial by affidavit.

## IV.

## DID KELLY "CONTINUE" A FRIVOLOUS ACTION?

An action which initially is not frivolous may become frivolous if the party or his or her attorney learns through discovery or pretrial and trial motions that the action is without any reasonable basis in law or equity and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. Kelly learned through discovery that the facts would not support a claim that Clark purchased the replacement cattle from Dailey. Therefore, in the First Amended Complaint, Kelly dropped that allegation.

The First Amended Complaint alleges that in September 1988, Dailey, at the request of Clark, agreed to and made arrangements to transport and sell the Erickson herd at auction in Illinois and that in consideration for Dailey's services, Clark promised to pay Dailey what was due out of the proceeds of the sale of the Erickson herd. Clark does not deny that he

employed Dailey to arrange for the sale of the Erickson herd; however, he denies that he agreed to assume the balance Erickson owed on his account with Dailey. The trial court concluded that Clark would not have agreed to compensate Dailey to this extent for such a minimal amount of work. When Kelly objected that the court was taking the case out of the hands of the jury, the court responded: "Yes. I am questioning the credibility of your client or ex-client." Questions of credibility cannot be resolved on summary judgment.

The trial court was convinced that Dailey's contract was with Erickson and no theory could impose liability on Clark. The court's first finding of fact on Clark's motion for costs and attorney fees was as follows:

1. I summarize this lawsuit in two words "deep pockets." Exhibit 1 is a transcript of a conversation between Attorney Morrow and the plaintiff Gary Dailey. That document shows that the sale of the cattle, which is the subject of this lawsuit, was made to Jerry Erickson not to the defendant in this action.[8]

Thus, the trial court concluded that Dailey's agency claim was frivolous. As to Dailey's other theories of liability, the court found:

[T]he first amended complaint ... alleges an agency relationship flying directly in the face of the testimony taken under oath at the time of the deposition. *Then we have some other grounds of unjust enrichment and promissory estoppel. Mr.*

---

[8] However, the transcript of Attorney Morrow's interview with Dailey also shows that Dailey told Morrow that Clark promised to pay him the balance due on Erickson's account if Dailey arranged for the sale of the Erickson herd.

*Kelly is right, I didn't address that because I didn't think it was even worth my time.*

(Emphasis added.)

The trial court did, however, address those theories sufficiently to conclude that "[e]ach cause of action in the Amended Complaint was of no merit at all." This is a conclusion of law. We decide questions of law *de novo. City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79, 83 (1992). We conclude that the facts alleged in Dailey's amended complaint provide a basis for his claim against Clark.

Kelly need not show that Dailey would have succeeded on all of the theories of liability he argued.

> It has long been basic to the pleading of a cause of action that a particular theory on which recovery may be based is not of great significance if the facts alleged or noticed are sufficient to state a cause of action or to assert a claim on which relief can be based.

*Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 645, 273 N.W.2d 233, 240 (1979). The facts alleged in Dailey's First Amended Complaint state a contract claim. According to those facts, Clark sought Dailey's help in disposing of the Erickson herd. He does not deny that he agreed to pay Dailey for that help; the only dispute is how much he agreed to pay. That is an issue to be decided by the fact-finder in a hearing for that purpose. The fact that Dailey may not succeed on his claim does not make his action frivolous.

Clark's attorney informed the court that "the entire basis for our motion for frivolous costs against Attorney Kelly is contained in [our] affidavit." Clark apparently did not understand that he bore the burden

657

to overcome the presumption that Kelly had not commenced or continued a frivolous action.

The trial court treated the hearing as an opportunity for Kelly to show why he was not guilty of commencing and continuing a frivolous action. However, Kelly was not given a fair opportunity to make that showing. Clark's attorney and the trial court repeatedly interrupted Kelly's questioning of his witness, Jerry Erickson. Ultimately, the trial court required Kelly to make an offer of proof. Kelly stated: "Judge, I just want to develop the record here." The court responded: "Make an offer of proof on the record and let's find out what you are going to be able to prove."

When Kelly attempted to testify as to what Dailey told him about his conversations with Clark, Clark's attorney objected that those conversations were privileged. The court sustained the objection. The court ruled that any conversations Kelly had with his client were privileged and before Kelly could testify to those conversations, Dailey had to waive the privilege. This was error. When an attorney's representation is attacked as negligent or unethical, the privilege does not attach. *See* SCR 20:1.6(c)(2).

Immediately after hearing argument, the trial court adopted the findings it had made when it granted Clark's motion for summary judgment. The trial court did not consider whether Dailey stated a claim on grounds of unjust enrichment or promissory estoppel. The court stated: "Mr. Kelly is right, I didn't address that because I didn't think it was even worth my time." The court explained why it considered this a "deep pockets" case. The court said: "I say it is a deep pocket theory, gentlemen, because Erickson didn't have any

money to go after; his livelihood was terminated when Clark took back his herd and it was Clark's herd, nobody[ ] else's." The trial court's final conclusion was: "I am saying as long as it proceeded, Mr. Kelly, [the action] was frivolous from the inception."

When a party claims that an attorney has commenced and continued a frivolous action, the party must overcome the presumption that the action is not frivolous. Clark did not attempt to rebut that presumption; he did not present evidence at the hearing on his motion or present himself for cross-examination.

An attorney is "to a large degree" immune from liability for acts performed in the discharge of his or her professional duties. *Strid v. Converse*, 111 Wis. 2d 418, 428, 331 N.W.2d 350, 356 (1983). "An attorney is immune from liability to third parties so long as the attorney pursues in good faith his or her client's interests on a matter *fairly debatable* in the law." *Stern*, 185 Wis. 2d at 242, 517 N.W.2d at 666 (emphasis added).

In an early line of cases, the Wisconsin Supreme Court adopted the rule that although a demurrer [now motion to dismiss] to a complaint might be defective, it was not frivolous if to so determine required argument, research, and deliberation. *Sage v. McLean*, 37 Wis. 357, 360 (1875). In *Cottrill v. Cramer*, 40 Wis. 555, 559 (1876), the court said:

> When answers or defenses admit of lawyer-like argument, such as courts should listen to, they are not sham in the sense of the statute. When it needs argument to prove that an answer or demurrer is frivolous, it is not frivolous, and should not be stricken off.

659

The standard in modern dress is an objective one: " '[W]hat would a reasonable attorney have done under the same or similar circumstances.' Because it is only when *no* reasonable basis exists for a claim or defense that frivolousness exists, the statute resolves doubts in favor of the litigant or attorney." *Radlein*, 117 Wis. 2d at 629, 345 N.W.2d at 886 (quoting *Estate of Bilsie*, 100 Wis. 2d 342, 350, 302 N.W.2d 508, 514 (Ct. App. 1981)) (quoted source omitted).[9]

■

We conclude that a reasonable attorney having the facts Kelly had could have concluded that a reasonable basis existed for Dailey's claim against Clark. The undisputed facts do not show whether Dailey may recover from Clark; they do show, however, that Kelly's belief that his client had a defensible claim against Clark was objectively reasonable.

## V.

### DID CLARK AND HIS ATTORNEY PRESENT CLARK'S MOTION FOR COSTS AND ATTORNEY FEES IN GOOD FAITH?

We have previously noted that Clark wrongfully failed to make discovery. *See* SCR 20:3.4(d). Clark's failure to make discovery unfairly frustrated Kelly's access to information.

---

[9] In the course of the hearing, the trial court demonstrated that it did not understand the standard it was to apply to Kelly's acts:

THE COURT: Which brings up the question that has been bugging me all day long, Mr. Kelly. Isn't it what your client thought, not you?

■■

The record also shows that, without informing Kelly, Clark's attorney negotiated with Dailey's divorce attorney and two days before the hearing on Clark's motion for costs and fees released Dailey from any liability for Clark's costs and attorney fees. Such contacts are prohibited. *See* SCR 20:4.2. The release disclaimed any intent to release Kelly from his liability to Clark for maintaining a frivolous action. Clark's attorney did not inform Kelly or the court prior to the hearing on Clark's motion that Clark had released Dailey from liability. Although Kelly moved to withdraw as Dailey's counsel, the court did not grant his motion until the hearing.

Therefore, at the time Clark's attorney negotiated the settlement with Dailey through Dailey's divorce counsel, Kelly still represented Dailey in this action. At the least, Clark's attorney had a duty of fairness to Kelly. *See* SCR 20:3.4. The fact that Clark had settled his claim under § 814.025, STATS., with Kelly's client may have affected how, or whether, Kelly would defend against Clark's claim.

■■

Kelly also inquired of Clark's attorney whether Clark would attend the hearing. His letter stated: "If we do not hear from you on this we will assume [Clark] will be at the hearing and it will not be necessary for us to serve him with a subpoena." Clark did not appear at the hearing and his attorney did not advise Kelly that Clark would not appear. The position of Clark's attorney was that Kelly had to subpoena Clark if he wanted him to appear. Clark's attorney apparently believed that the trial court's findings of fact and his affidavit shifted the burden to Kelly to prove that he was not guilty of commencing and continuing a frivolous action.

The trial court apparently also considered that the purpose of the hearing was not to try the issues of fact but to give Kelly an opportunity to be heard on the findings and conclusions the court had already made.[10] Clark's attorney objected to everything Kelly stated in his offer of proof on grounds that none of the evidence Kelly intended to introduce was relevant. Kelly was not given a fair opportunity to defend himself.

In summary, we conclude that Kelly pursued his client's interests in good faith on a matter "fairly debatable" in the law and equity and did not commence or continue a frivolous action. Dailey's claim against Clark admitted of lawyer-like argument such as courts should listen to. We therefore reverse the judgment and direct the trial court on remand to dismiss Clark's motion. Kelly is entitled to costs.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[10] Clark's attorney reinforced the trial court's mistaken belief that the court's summary judgment findings shifted the burden to Kelly to show why Dailey's action was not frivolous. Baxter argued as follows to the court:

MR. BAXTER: These matters were all argued in the summary judgment. The court has already found there is no basis in fact in these proceedings for any of this. The only thing we are here for this morning is whether or not Mr. Kelly should be responsible to pay Mr. Clark's costs in this action and he has now for an hour and a half been arguing matters that are entirely contrary to the law of the State of Wisconsin. He has presented you with no law to support the basis for his proceedings for the last two years in the lawsuit against Mr. Clark. It just continues on and on.