JUNEAU COUNTY, Petitioner-Appellant-Cross-Respondent,

v.

COURTHOUSE EMPLOYEES, LOCAL 1312, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Highway Department Employees, Local 569, American Federation of State, County and Municipal Employees, AFL-CIO, Professional Employees, American Federation of State, County and Municipal Employees, AFL-CIO, Respondents-Respondents-Cross-Appellants.†

Court of Appeals

*No. 96–2816. Submitted on briefs April 23, 1997.—Decided January 15, 1998.*

(Also reported in 576 N.W.2d 565.)

† Petition to review granted.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Mark B. Hazelbaker* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

On behalf of the respondents-respondents-cross-appellants, the cause was submitted on the brief of *Bruce F. Ehlke* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer* of Madison.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

ROGGENSACK, J. Juneau County appeals from the circuit court's conclusion that the declaratory judgment action which it filed on October 12, 1995, was maintained when Juneau County knew or should have known that the action was frivolous within the meaning of § 814.025, STATS. Local 1312, and others, cross-appeal the conclusion that the action, though frivolous to continue, was not frivolous to file. Because we conclude that the amended complaint and answer thereto define a justiciable controversy appropriately decided by the court pursuant to § 806.04, STATS., we reverse the judgment in regard to Juneau County and affirm the judgment in regard to Local 1312 and other cross-appellants.

## BACKGROUND

On October 12, 1995, Juneau County filed an action for declaratory judgment in the circuit court of Juneau County. It sought declaration pursuant to § 806.04, STATS., that § 111.70(4)(cm)6., STATS., no longer applied to counties because of amendments made to that statute by 1993 Wis. Act 16 and 1995 Wis.

Act 27.[1] Juneau County asked the court to determine whether the 1993 addition of the terms, "qualifying for interest arbitration under subd. 5s. in collective bargaining units to which subd. 5s. applies," made subd. 6. applicable to bargaining units consisting solely of school district professional employees.

Section 111.70(4)(cm)6., STATS., as repealed and recreated by 1995 Wis. Act 27, § 3794k, states in relevant part:

> "Interest arbitration." a. If in any collective bargaining unit a dispute relating to one or more issues, qualifying for interest arbitration under subd. 5s. in a collective bargaining unit to which subd. 5s. applies, has not been settled after a reasonable period of negotiation . . . either party, or the parties jointly, may petition the commission, in writing, to initiate compulsory, final and binding arbitration, as provided in this paragraph.[2]

---

[1] 1993 Wis. Act 16, §§ 2207aL and 2207am were enacted on August 10, 1993, and became effective January 1, 1994. 1995 Wis. Act 27, § 3794k was enacted on July 26, 1995, and became effective July 29, 1995.

[2] In regard to the language at issue in the declaratory judgment action, subd. 6. was in a similar form in the 1993–94 Statutes. It stated in relevant part:

"Interest arbitration." If a dispute relating to one or more issues, qualifying for interest arbitration under subd. 5s. in collective bargaining units to which subd. 5s. applies, has not been settled after a reasonable period of negotiation and after mediation by the commission under subd. 3. and other settlement procedures, if any, established by the parties have been exhausted, and the parties are deadlocked with respect to any dispute between them over wages, hours and conditions of employment to be included in a new collective bargaining agreement, either party, or the parties jointly, may petition the commission, in writing, to initiate compulsory, final and binding arbitration, as provided in this paragraph.

Subdivision 5s., which is referred to in § 111.70(4)(cm)6., STATS., states in relevant part:

> In a collective bargaining unit consisting of school district professional employes, the municipal employer or the labor organization may petition the commission to determine whether the municipal employer has submitted a qualified economic offer.

The bargaining unit for "school district professional employes" was construed by this court to mean a unit comprised exclusively of those employees defined in § 111.70(1)(ne), STATS. *Madison Teachers, Inc. v. Madison Metro. Sch. Dist.*, 197 Wis. 2d 731, 749, 541 N.W.2d 786, 793 (Ct. App. 1995).

Because none of its employees were "school district professional employes" within the statutory meaning, the County contended that it was not required to submit issues to interest arbitration[3] under § 111.70(4)(cm)6., STATS. In response to the amended complaint, the unions also requested a declaration of the meaning of the statute and stated: "It Is Prayed that this Circuit Court enter its order and judgment, declaring that Juneau County is subject to interest arbitration as provided for at Sec. 111.70(4)(cm), Wis. Stat. . . . ." Therefore, it initially appeared that all parties were in agreement that an action for declaratory judgment was an appropriate means for resolving whether Juneau County was subject to interest arbitration.

On November 15, 1995, Juneau County moved for judgment on the pleadings, asserting that the language of § 111.70(4)(cm)6., STATS., was "plain and unambigu-

---

[3] Interest arbitration is the arbitration of which terms must be included in a contract that is in the process of being negotiated.

ous." On March 13, 1996, the circuit court denied Juneau County's motion, concluding that § 111.70(4)(cm)6. was ambiguous. The court ordered Juneau County to file "affidavits or other materials it may choose to file relating to the intention of the Wisconsin Legislature in enacting Sec. 111.70(4)(cm)6, Wis. Stat., as amended" on or before March 31, 1996. The court also gave the unions ten days after the response of Juneau County to file any additional responsive materials, prior to the court's ruling on the meaning of § 111.70(4)(cm)6. On April 15, 1996, the unions moved for summary judgment in their favor, and on June 28, 1996, they moved for fees and costs, alleging that the action was frivolous within the meaning of § 814.025, STATS.

On August 19, 1996, the circuit court entered an order concluding that summary judgment should be granted to the unions and that the County's maintaining this action for a declaratory ruling violated § 814.025, STATS., but that the action did not become frivolous until February 16, 1996, when the unions offered to settle without fees and costs if Juneau County would dismiss the action. The court also held that the interest arbitration provisions of the disputed statute do apply "to all 'municipal employes' as defined at Sec. 111.70(1)(i), Wis. Stat. . . ." The court thereafter dismissed the complaint and ordered Juneau County to reimburse the unions in the amount of $7,150 in costs and fees, pursuant to § 814.025. Juneau County appealed from the portions of the judgment which relate to frivolousness, costs and fees, but it did not appeal from the declaratory ruling on the application of § 111.70(4)(cm)6., STATS. The unions appeal from the conclusion that the action did not become frivolous until February 16th.

## DISCUSSION

### Standard of Review.

■

Whether a claim is frivolous within the meaning of § 814.025, STATS., involves a mixed question of law and fact. *State v. State Farm Fire & Cas. Co.*, 100 Wis. 2d 582, 601–02, 302 N.W.2d 827, 837 (1981). However, when the facts are undisputed, our determination about whether those facts would lead a reasonable attorney to conclude that the claim was frivolous when commenced or when continued, presents a question of law which we review *de novo*. *Zinda v. Krause*, 191 Wis. 2d 154, 176, 528 N.W.2d 55, 63 (Ct. App. 1995).

### Declaratory Judgment.

#### *1. General Principles.*

■

In 1927, the State of Wisconsin adopted the Uniform Declaratory Judgment Act. That Act is presently set forth at § 806.04, STATS. It states in parts relevant to this action:

> (1) SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; . . . .
>
> (12) CONSTRUCTION. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect

to rights, status and other legal relations; and is to be liberally construed and administered.

The Wisconsin courts have interpreted the Uniform Declaratory Judgment Act as requiring four conditions precedent to maintaining a proper action:

(1) There must exist a justiciable controversy—that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.
(2) The controversy must be between persons whose interests are adverse.
(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
(4) The issue involved in the controversy must be ripe for judicial determination.

*Pension Management, Inc. v. DuRose*, 58 Wis. 2d 122, 127–28, 205 N.W.2d 553, 555 (1973) (citation omitted).

■

It has long been held that the purposes of the Act are furthered by authorizing the court to take jurisdiction at a point in time that may be earlier than it would ordinarily do so. And in so doing, the Act provides relief, that is to some degree, anticipatory or preventive in nature. *Fire Ins. Exch. v. Basten*, 202 Wis. 2d 74, 85, 549 N.W.2d 690, 694 (1996). Unions have in the past used § 806.04, STATS., to obtain a declaration of the meaning of other subsections of § 111.70(4)(cm), STATS., which use has been specifically approved by this court. *Madison Teachers*, 197 Wis. 2d at 747–48, 541 N.W.2d at 793. A liberal construction has been given to the Declaratory Judgment Act by the courts of the State of Wisconsin since its inception. *See Odelberg v. City of Kenosha*, 20 Wis. 2d 346, 122 N.W.2d 435 (1963); *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 133

N.W.2d 393 (1965); *City of Kenosha v. Unified Sch. Dist. No. 1*, 55 Wis. 2d 642, 201 N.W.2d 66 (1972). And, it has been held that when a justiciable controversy is presented, a complaint may not be dismissed based on the contention that it fails to state a claim. *Iowa Nat'l Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 43 Wis. 2d 280, 285, 168 N.W.2d 610, 613 (1969).

### 2. *Juneau County's Claim.*

The dispute between Juneau County and the unions in the circuit court turned on whether the legislature removed the County's obligation to participate in compulsory interest arbitration when it added the phrase, "qualifying for interest arbitration under subd. 5s. in collective bargaining units to which subd. 5s. applies," by 1993 Wis. Act 16.[4]

In its First Amended Complaint, on which the circuit court based its decision, Juneau County alleged that it was in the process of negotiating with the unions to bargain for a new contract, on behalf of its employees. It alleged that during the course of the negotiations, "The Negotiating Committee has advised defendants Local 1312 and Local 569 that Juneau County does not believe that sec. 111.70(4)(cm)6., Stats., applies to Juneau County." It further alleged that "[a]fter two negotiating sessions failed to produce a successor collective bargaining agreement, Local 569 filed a document with the Wisconsin Employment Relations Commission which purported to invoke the provisions of sec. 111.70(4)(cm)6., Stats., with respect to the pending contract negotiations." Those allega-

---

[4] Section 111.70(4)(cm)6., Stats., has not been the subject of judicial construction in a reported case.

tions were admitted in paragraph 5 of the unions' answer. By so alleging and admitting, the parties established a justiciable controversy between persons whose interests are adverse. Additionally, Juneau County had a legal interest in the controversy and, since the union/county contract was under negotiation, and the language in question had never been construed, the controversy was ripe for judicial determination. Therefore, we conclude that § 806.04, STATS., was properly invoked by Juneau County when it filed the action.

**Section 814.025, STATS.**

### 1. General Principles.

Paragraph (3)(b) of § 814.025, STATS., provides the statutory basis for the circuit court's conclusion that Juneau County maintained a frivolous action. It states in relevant part:

> The party or the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Whether an action is frivolous is a mixed question of fact and law. *Zinda,* 191 Wis. 2d at 176, 528 N.W.2d at 63. Ascertaining what the party knew or should have known is a question of fact and whether the facts, once established, would lead a reasonable party or attorney to conclude that the claim is frivolous is a question of law. *Id.* The legal question to be resolved in a § 814.025(3)(b), STATS., analysis is not whether one can prevail on his claim, but whether the claim is so

indefensible that the party or his attorney should have known it to be frivolous. *Stoll v. Adriansen*, 122 Wis. 2d 503, 517, 362 N.W.2d 182, 189 (Ct. App. 1984).

██

When a party's claim can be determined only after research and deliberation, it is not frivolous. *Kelly v. Clark*, 192 Wis. 2d 633, 659, 531 N.W.2d 455, 464 (Ct. App. 1995). One party's contention that the other's action is frivolous reflects more about the nature of litigation than it does about the merits of the allegation. *Id.* at 650, 531 N.W.2d at 460. And finally, all claims are presumed to be nonfrivolous. *Id.* at 654, 531 N.W.2d at 462.

### 2. *Juneau County's Claim.*

After the circuit court concluded that subd. 6. was ambiguous, the unions moved for summary judgment. They submitted affidavits, which had numerous documents appended to them. The unions contend the documents are "legislative history."[5] The unions also contend that the circuit court was bound to accept these submissions as conclusive of legislative intent. Some of the unions' submissions also contained past positions taken by Juneau County's current counsel, in regard to subd. 6. Based on the later documents, the unions argue that it was frivolous for Juneau County to take a position contrary to that which its attorneys had maintained in earlier writings. The circuit court ruled in the unions' favor, in essence concluding that once the unions had provided all their documents and made

---

[5] Legislative history is defined as, "The background and events, including committee reports, hearings, and floor debates, leading up to enactment of a law." BLACK'S LAW DICTIONARY, 900 (6th ed. 1990).

their argument about the intent of the legislature in enacting § 111.70(4)(cm)6., STATS., to Juneau County, Juneau County's continuing to ask the court for a declaratory ruling on the meaning of this ambiguous statute was frivolous because it was clear the unions were correct.

■

When courts are asked to construe a statute that is ambiguous, they attempt to determine the intent of the legislature. Legislative history, when evidence of such history is available, is only one tool which is used to determine legislative intent. Legislative intent is also determined from the words of the statute in relation to its context, scope, subject matter and the objective the legislature sought to accomplish. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997).

Here, many of the documents submitted in support of the unions' motion for summary judgment are not legislative history, as that term is usually understood, because they were prepared several years *after* the enactment of the 1993 amendments to § 111.70(4)(cm)6., STATS., and because there is no evidence they were considered by the legislature *prior to or during the course of* the enactment of 1993 Wis. Act 16 on August 10, 1993. Nevertheless, they are aids commonly used in statutory construction. *See Ball v. District No. 4, Area Bd. of Vocational, Technical and Adult Educ.*, 117 Wis. 2d 529, 543–45, 345 N.W.2d 389, 397 (1984); *Office of State Public Defender v. Circuit Court for Dodge County*, 104 Wis. 2d 579, 585 n.3, 312 N.W.2d 767, 770 n.3 (1981).

Several of the documents the unions submitted were from the Legislative Fiscal Bureau, *e.g.*, "Dispute Resolution Procedures for Municipal Employees,"

dated January 1995; "Modifications to Recommendations of the Assembly," dated June 1995; and "Comparative Summary of Assembly Bill 150," dated October 1995. All three documents indicate the manner in which the author of the document believes subd. 6. functions relative to county employees, but none of them tells what the legislature was trying to accomplish by its 1993 amendments. A veto message from the governor for a partial veto of 1995 Wis. Act 27 was also submitted. It explained why he was not able to veto the repeal of the sunset provisions for interest arbitration in 1995, but it does not explain what the legislature was attempting to accomplish in 1993. Additionally, the unions submitted many documents prepared by persons associated with the Wisconsin Counties Association. All are relevant and may prove instructive because they were prepared by agencies or persons who are regularly involved with legislation as it is enacted. However, each represents the author's respective interpretation of how the law functions. They are not statements of the intent of the legislature in 1993, when the changes at issue were enacted.[6]

---

[6] Although we recognize the usefulness of some of the materials submitted by the unions, we hold only that the documents submitted *are not conclusive* of legislative intent for purposes of this declaratory judgment action. We do not analyze the other aids which a court uses in determining legislative intent, such as the words of the statute in relation to its context, scope, subject matter and the objective the legislation sought to accomplish, because the construction of § 111.70(4)(cm)6., STATS., is not before us. We are faced only with the merits of a conclusion of frivolousness for actions taken by Juneau County pursuant to § 806.04, STATS., Wisconsin's declaratory judgment action.

And finally, the unions submitted many statements by Juneau County's current counsel. However, when attempting to determine legislative intent, courts do not consider whether counsel for one of the parties has taken a particular position on the meaning of a statute in another context because counsel's past positions, whether correct or incorrect, are not evidence of what the legislature intended. Furthermore, when a lawsuit has been commenced pursuant to § 806.04, STATS., in regard to a statute that has not been construed in a published case, the historic, liberal construction of § 806.04, must be considered. Section 806.04 is a remedial statute enacted to afford relief from uncertainty and insecurity with respect to legal rights and obligations. The circuit court did not consider this, when it concluded that maintaining the action was frivolous.

Therefore, we conclude that because the four-part test of *Pension Management* has been met, and the statute has not been previously litigated, it would have been inconsistent with the policy that underlies the statute to conclude that the initial filing of the action was frivolous. Additionally, as the action progressed to judicial resolution, the unions' assertion that the action was frivolous, or that they would surely win, even if the court appeared likely to rule as the unions asserted, created no obligation to dismiss the action prior a judicial resolution. This is so because the relief available pursuant to a declaratory judgment action enables persons to order their affairs consistent with a rule of law established by a court. Here, the unions were offering *evidence* for the court's consideration, but it was for *the court* to declare the rule of law. Therefore, we conclude Juneau County did not maintain a frivolous action

when it refused to accept the unions' offer to dismiss the action prior to obtaining declaratory judgment of the meaning of § 111.70(4)(cm)6., STATS.

## CONCLUSION

Because the declaratory judgment action filed by Juneau County was properly begun under § 806.04, STATS., we affirm the circuit court's judgment relative to the cross-appeal. However, because the circuit court relied on factors that are not legally significant under § 814.025(3)(b), STATS., when an action is maintained pursuant to § 806.04, we reverse the portion of the judgment which concluded that Juneau County maintained a frivolous action and we reverse the attorney fees and costs associated therewith.

*By the Court.*—Judgment affirmed in part and reversed in part.

DYKMAN, P.J. *(dissenting).* I differ with the majority because I conclude that the extrinsic aids relied upon by the trial court to determine the meaning of § 111.70(4)(cm)6., STATS., lead to only one conclusion: The legislature did not intend 1993 Wis. Act 16 to extend Qualified Economic Offer (QEO) procedure to municipal employees. The posture of this case is unusual, however, because Juneau County has not appealed the trial court's conclusion that it must continue to use the arbitration procedures of the statute. There is no longer any question about that conclusion. The only question is whether the meaning of the statute, after the relevant extrinsic aids are examined, is so clear that continued litigation as to the statute's meaning was frivolous.

300

Section 814.025, STATS., penalizes those who commence or continue a lawsuit that is without any reasonable basis in law or equity. Such an action is "frivolous," permitting the trial court to assess costs and attorney fees against the person bringing such a lawsuit. In the context of this case, once the trial court concluded that § 111.70(4)(cm)6., STATS., was ambiguous and that it must consider extrinsic aids to determine whether Juneau County could use QEO procedure, was Juneau County's continued assertion that it could use that procedure frivolous? To answer that question, we must examine the extrinsic aids upon which the trial court relied.

The first extrinsic aid that lends meaning to § 111.70(4)(cm)6., STATS., is the history of how 1995 Wis. Act 27 was passed. It began as Assembly Bill 150, the biennial budget bill. The Legislative Fiscal Bureau summary of Assembly Bill 150 as it pertained to collective bargaining states:

> *Repeal Sunset of Interest Arbitration Law for Non-protective Municipal Employes Including School District Professional Employes.* Repeal the July 1, 1996, scheduled sunset of the interest arbitration procedures established under s. 111.70(4)(cm) of the statutes applicable to nonprotective municipal employes including school district professional employes. Nonprotective county employes would not be subject to these continuing procedures commencing July 1, 1996.

Legislative Fiscal Bureau, Comparative Summary of Assembly Bill 150 (Oct. 1995).

But the Senate and then the full legislature changed Assembly Bill 150. The Legislative Fiscal Bureau summary shows:[1]

> Delete provision which would have removed non-protective county employes, effective July 1, 1996, from coverage under the dispute resolution procedures of Subchapter IV of Chapter 111 of the statutes. [Because Engrossed AB 150 also repeals the July 1, 1996, scheduled sunset of the interest arbitration procedures under s. 111.70(4)(cm) of the statutes, this change would result in nonprotective county employes continuing to be subject to that law on and after July 1, 1996 . . . .]

Legislative Fiscal Bureau, Senate Republican Caucus Amendment: Modifications to Recommendations of the Assembly (June 27, 1995) (brackets in original).

I find it persuasive that in 1995, the Assembly wanted to discontinue interest arbitration for county employees, but reached a compromise with the Senate that left interest arbitration intact for them. "Adoption of an amendment is evidence that the legislature intends to change the provisions of the original bill." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.18, at 369 (5th ed. 1992). I do not believe that the 1995 Assembly would have attempted to repeal interest arbitration for municipal employees had it already done so two years earlier.

---

[1] Courts have accepted Legislative Fiscal Bureau memoranda as evidence of legislative intent. *See, e.g., In re Brandon S.S.*, 179 Wis. 2d 114, 153 n.36, 507 N.W.2d 94, 108–09 (1993); *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 543, 345 N.W.2d 389, 396 (1984); *Ball v. District No. 4, Area Bd.*, 115 Wis. 2d 555, 567, 341 N.W.2d 707, 714 (Ct. App. 1983), *rev'd on other grounds*, 117 Wis. 2d 529, 345 N.W.2d 389 (1984).

The Governor concluded that 1995 Wis. Act 27 did not change the law requiring counties to arbitrate disputes with their employees. His veto message included the following:

> Although I support a sunset of [the mediation-arbitration law for counties], I am placed in the unfortunate position of not being able to veto its repeal without also vetoing the repeal of the sunset of the qualified economic offer (QEO) provisions of the mediation-arbitration law that currently apply to schools. I believe maintaining the QEO provisions for schools is critical to ensuring that schools can control spending. *However, since the mediation-arbitration law will still apply to counties*, it will continue to be difficult for them to manage their employe compensation costs. . . . I strongly encourage the Legislature to enact meaningful mediation-arbitration reform for counties.

(Emphasis added.) I do not believe that the Governor would have concluded that interest arbitration still applied to counties if the legislature had repealed it two years earlier.

Many of Wisconsin's counties have formed an association to advance their interests. The Executive Director of the Wisconsin Counties Association sent an advance memorandum to the members of the association on July 28, 1995. In his memorandum, he outlined the provisions of the 1995–97 biennial budget that he felt were of importance to Wisconsin's counties:

> First, the Governor signed into law the binding arbitration provisions inserted into the budget by the Senate. Essentially, these provisions eliminate the sunset of binding arbitration . . . . *The practical effect of the budget is that binding arbitration will*

> *continue in its present form in relation to county*
> *contracts unless the Legislature takes some future*
> *action.*

(Emphasis added.) I do not believe that the counties' representatives would tell them that interest arbitration was still effective if the legislature had repealed it two years earlier.

The legislature has not exempted declaratory judgment actions from the requirements of § 814.025, STATS. When it becomes apparent that a lawsuit seeking a declaratory judgment has no reasonable chance of success, a litigant and the litigant's attorney must agree that the law be declared contrary to their original request or risk the imposition of § 814.025 fees and costs.

This lawsuit was not frivolous when Juneau County began it. A reasonable person could begin this lawsuit and assert that § 111.70(4)(cm)6., STATS., was clear and unambiguous. If a statute is clear and unambiguous, we are prohibited from looking beyond the statutory language to ascertain its meaning. *State v. Brunette*, 212 Wis. 2d 139, 141, 567 N.W.2d 647, 649 (Ct. App. 1997). Although an allegation that § 111.70(4)(cm)6. is clear and unambiguous would be a stretch, the various views on what is clear and unambiguous make it difficult to say that such an assertion is without *any* support whatsoever. However, once the trial court determined that the statute was ambiguous and the extrinsic aids I have quoted were available to help determine whether 1993 Wis. Act 16 had repealed interest arbitration for county employees, continued assertion that it had done so was frivolous. Thus, § 814.025, STATS., applied, and Juneau County was responsible for the defendants' attorneys' fees from that time on. I would therefore also affirm the trial

court on the defendants' cross-appeal in which they assert that they are entitled to attorneys' fees from the commencement of the action.