JUNEAU COUNTY, Petitioner-Appellant-Cross-
Respondent,

v.

COURTHOUSE EMPLOYEES, LOCAL 1312, AMERICAN FEDER-
ATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO, Highway Department Employees, Local
569, American Federation of State, County and
Municipal Employees, AFL-CIO, Professional
Employees, American Federation of State, County and
Municipal Employees, AFL-CIO, Respondents-
Respondents-Cross-Appellants-Petitioners.

Supreme Court

*No. 96–2816. Oral argument September 9, 1998.—Decided
November 4, 1998.*

(Also reported in 585 N.W.2d 587.)

631

For the respondents-respondents-cross-appellants-petitioners there were briefs by *Bruce F. Ehlke*, of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Madison and oral argument by *Bruce F. Ehlke*.

For the petitioner-appellant-cross-respondent there was a brief by *Mark B. Hazelbaker* and *Bell, Gierhart & Moore, S.C.*, Madison and oral argument by *Mark K. Hazelbaker*.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Juneau County v. Courthouse Employees*, 216 Wis. 2d 283, 576 N.W.2d 565 (Ct. App. 1998), affirming in part and reversing in part a judgment entered by the Circuit Court for Juneau County, William M. McMonigal, Judge.

¶ 2. The circuit court granted a motion for summary judgment to the Courthouse Employees, Local 1312, AFSCME, AFL-CIO and other unions (hereafter referred to collectively as the Unions) interpreting Wis. Stat. § 111.70(4)(cm)6.a.(1995–96) in the manner requested by the defendant Unions. The circuit court ruled that the binding interest arbitration provisions set forth in Wis. Stat. § 111.70(4)(cm)6.a. apply to all "municipal employes" as defined in § 111.70(1)(i) except insofar as they may have been modified by § 111.70(4)(cm)5s. pertaining to "school district professional employes." This part of the judgment was not

633

appealed to the court of appeals and is not before this court.

¶ 3. The issue in this court is the portion of the circuit court's judgment awarding attorney fees to the Unions under Wis. Stat. § 814.025(3)(b) (1995–96), which pertains to frivolous actions.[1] The circuit court held that Juneau County's commencement of its action for interpreting Wis. Stat. § 111.70(4)(cm)6.a. was not frivolous but that continuing the action became frivolous after the Unions offered not to seek attorney fees or costs if Juneau County would voluntarily dismiss the action with prejudice. The court of appeals affirmed that part of the judgment holding that the commencement of the action was not frivolous and reversed that part of the judgment holding that the continuation of the action was frivolous.

¶ 4. The only issue before this court is whether the commencement or continuation of the declaratory judgment action by Juneau County or its attorneys was

---

[1] Wis. Stat. § 814.025 (1995–96) provides in relevant part:

**Costs upon frivolous claims and counterclaims. (1)** If an action. . .commenced or continued by a plaintiff. . .is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

. . .

**(3)** In order to find an action. . .to be frivolous under sub. (1), the court must find one or more of the following:

. . .

(b) The party or the party's attorney knew, or should have known, that the action. . .was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

frivolous.[2] The question presented is whether the declaratory judgment action was commenced or continued by Juneau County or its attorneys "without any reasonable basis in law or equity." Wis. Stat. § 814.025(3)(b). We affirm the court of appeals holding that neither the commencement nor continuation of the action by Juneau County or its attorneys was frivolous.

I

¶ 5. For purposes of the motion for summary judgment, the facts are not in dispute. On October 12, 1995, Juneau County commenced a declaratory judgment action pursuant to Wis. Stat. § 806.04 seeking a declaration that the binding interest arbitration provisions of Wis. Stat. § 111.70(4)(cm)6.a. apply only to school district professional employes and not to other county or municipal employes as defined in § 111.70. According to Juneau County, the legislature intended to limit the scope of binding interest arbitration solely to disputes involving school district professional employes. As support for its interpretations of the statute Juneau County relies on the language of § 111.70(4)(cm)6.a. italicized and quoted below, which was adopted by 1995 Wisconsin Act 27 and reads in pertinent part as follows:

---

[2] Because we determine that the materials submitted by the Unions did not render the action frivolous, we need not determine whether Juneau County knew or should have known about materials submitted by the Unions that were readily available to Juneau County and its attorneys had they researched the issue of statutory interpretation before bringing the action. We therefore do not distinguish between the commencement and the continuation of the action.

Sec. 111.70(4)(cm)6. 'Interest arbitration.' a. If in any collective bargaining unit a dispute *relating to one or more issues, qualifying for interest arbitration under subd. 5s. in a collective bargaining unit to which subd. 5s. applies*, has not been settled after a reasonable period of negotiation. . .either party, or the parties jointly, may petition the commission, in writing, to initiate compulsory, final and binding arbitration, as provided in this paragraph (emphasis added).[3]

¶ 6. Section 111.70(4)(cm)5s., which is referenced in Wis. Stat. § 111.70(4)(cm)6.a., was created in 1993[4] and states in relevant part as follows:

'Issues subject to arbitration.' a. In a collective bargaining unit consisting of school district professional employes, the municipal employer or the labor organization may petition the commission to determine whether the municipal employer has submitted a qualified economic offer.

¶ 7. Juneau County's declaratory judgment action asked the circuit court to declare that Wis. Stat. § 111.70(4)(cm)6.a., as amended in 1995, does not require Juneau County to participate in binding interest arbitration with the Unions because none of the employes who are members of the defendant Unions

---

[3] Wis. Stat. § 111.70(4)(cm)6.a., as amended in 1995, is for our purposes substantially the same as the 1993 enactment. *See* 1993 Wis. Act. 16.

[4] 1993 Wis. Act 16. The 1995 Act did not modify Wis. Stat. § 111.70(4)(cm)5s.

The action was commenced October 12, 1995. The 1995 amendments to § 111.70 took effect July 1, 1996. West's Wis. Stats. § 111.70, Historical and Statutory Notes (1997). For purposes of this review any differences between the 1993 and 1995 versions of Wis. Stat. § 111.70(4)(cm)6.a. are not relevant.

are school district professional employes. The Unions argued that the binding interest arbitration provisions apply to all county and municipal employes and that the italicized portion of Wis. Stat. § 111.70(4)(cm)6.a. limits the circumstances under which binding interest arbitration is available to school district professional employes.[5]

¶ 8. Juneau County moved for judgment on the pleadings, asserting that the statutory language is plain and unambiguous. The circuit court concluded that the statute was ambiguous because it was capable of being understood by reasonably well-informed persons in two or more senses. The circuit court then ordered Juneau County and the Unions to supplement the pleadings with materials relating to the intention of the Wisconsin Legislature in enacting the 1995 amendments to Wis. Stat. § 111.70(4)(cm)6.a.

¶ 9. Juneau County advised the circuit court that it would not be submitting additional materials because it had not found any legally relevant evidence of the legislature's intent in enacting the revised version of Wis. Stat. § 111.70(4)(cm)6.a. The Unions submitted materials that will be discussed later. The Unions further offered to forego attorney fees and costs if Juneau County would voluntarily dismiss the action with prejudice. Juneau County refused to dismiss the action.

¶ 10. The essence of the Unions' position is that had Juneau County and its attorneys examined materials relating to legislative intent at the commencement of the action and thereafter, they would have known or should have known that all the evidence contravened

---

[5] According to the Unions, school district professional employes have binding interest arbitration available if the school district fails to submit a "qualified economic offer.".

their interpretation of the 1995 amendments to Wis. Stat. § 111.70(4)(cm)6.a. and that there was no reasonable basis in law or equity for their position.

¶ 11. Although Juneau County presented no evidence of legislative intent to counter the materials submitted by the Unions, Juneau County made two arguments to the circuit court. First, Juneau County asserted that none of the materials offered by the Unions was admissible evidence of legislative intent. Second, Juneau County argued that the statutory provisions at issue should be construed by evaluating their interaction with other portions of Wis. Stat. § 111.70 relating to the same subject matter. In this court, Juneau County further contends that adoption of the Unions' position would chill creative, innovative arguments that serve to advance the development of law.

¶ 12. Following their unsuccessful attempt to get Juneau County to voluntarily dismiss the action, the Unions moved for summary judgment, seeking attorney fees and costs on the ground that Juneau County's action was frivolous. The circuit court granted the Unions' motion, noting that Juneau County's continuation of the action was frivolous after the Unions had submitted evidence of legislative intent and offered to forego attorney fees or costs if the action were dismissed. The circuit court granted the Unions' motion and awarded the Unions $7,150 in costs and attorney fees.

## II

[1]
¶ 13. We examine first the standard of review to be applied in this case. A claim is frivolous when a party or attorney "knew or should have known" that the claim lacked "any reasonable basis in law and

equity." Wis. Stat. § 814.025(3)(b). A court uses an objective standard to determine whether an action is frivolous. The standard is "whether the attorney knew or should have known that the position was frivolous as determined by what a *reasonable attorney* would have known or should have known under the same or similar circumstances." *Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 241, 517 N.W.2d 658 (1994) (quoting *Sommer v. Carr*, 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981)).

¶ 14. Inquiries about frivolousness involve a mixed question of law and fact. *Stern*, 185 Wis. 2d at 241 (citing *State v. State Farm Fire & Cas. Co.*, 100 Wis. 2d 582, 601–602, 302 N.W.2d 827 (1981)). The determination of what a party or attorney "knew or should have been known" is a factual question, and the circuit court's findings of fact will not be reversed by an appellate court unless the findings of fact are clearly erroneous. *See* Wis. Stat. § 805.17(2).

¶ 15. The ultimate conclusion of whether the circuit court's factual determinations support the legal determination of frivolousness is, however, a question of law, which this court determines independent of the circuit court or court of appeals, benefiting from the analyses of both courts. *Id.* (citing *State Farm*, 100 Wis. 2d at 602).

¶ 16. In determining whether an action is frivolous a court should keep in mind that a significant purpose of Wis. Stat. § 814.025 is to help maintain the integrity of the judicial system and the legal profession. *Sommer*, 99 Wis. 2d at 799. Courts and litigants should not be subjected to actions without substance. A deter-

mination of frivolousness, however, is "an especially delicate area"; a court must be cautious in declaring an action frivolous, *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984), lest it stifle "the ingenuity, foresightedness and competency of the bar . . . ." *Id.* "Because it is only when *no* reasonable basis exists for a claim or defense that frivolousness exists, the statute resolves doubts in favor of the litigant or attorney." *In re Estate of Bilsie*, 100 Wis. 2d 342, 350, 302 N.W.2d 508 (Ct. App. 1981) (emphasis in original). *See also Atkinson v. Mentzel*, 211 Wis. 2d 628, 648, 566 N.W.2d 158 (Ct. App. 1997).[6]

### III

¶ 17. To impose reasonable attorney fees on Juneau County under the frivolous action statute, the court must be satisfied that Juneau County or its attorneys knew or should have known that the action seeking a declaration that the County was not required under Wis. Stat. § 111.70(4)(cm)6.a. to engage in binding interest arbitration with the Unions was "without any reasonable basis in law or equity." Wis. Stat. § 814.025(3)(b). The resolution of this issue requires an analysis of the substantive question that Juneau County raised about the interpretation of Wis. Stat. § 111.70(4)(cm)5s. and 6.a.

---

[6] The court of appeals appears to have applied a different, more liberal standard for evaluating whether a declaratory judgment action under Wis. Stat. § 806.04 is frivolous under § 814.025. *See Juneau County*, 216 Wis. 2d at 298. We can find nothing in either § 814.025 or § 806.04 that would support applying in declaratory judgment actions anything but the well-established standard for assessing frivolous claims.

¶ 18. We approach the issue of frivolousness by examining first the text and context of the statute and then the materials presented by the Unions.

¶ 19. The circuit court properly stated that in resolving the issue of ·statutory interpretation presented in the declaratory judgment action it must examine first the statutory language and then the statute in context. Therefore, the circuit court carefully considered the text of the provisions, the context of the provisions, and an affidavit submitted with the amicus brief of the Wisconsin Counties Association by a "highly skilled" University of Wisconsin English professor setting forth "a highly technical examination" of the clauses of the statutory provisions. Following its analysis, the circuit court concluded that Wis. Stat. § 111.70 is "one of the more complex statutory provisions in the books" and that the statute is ambiguous and unclear because reasonable people reading the statute would not come to the same conclusion.[7] The

---

[7] The Unions argued that the statute was ambiguous. During oral argument, the Unions' counsel stated that an October 1993 *Wisconsin Counties* magazine article authored by Attorney Robert W. Mulcahy, one of the attorneys for Juneau County, demonstrates that reasonable people differed about the statute and that the statute was unclear and ambiguous. Attorney Mulcahy's analysis of the 1993 amendments is the same as the Unions' position in this action.

An interpretation of a statute by people affected by it can be given weight, especially if the construction was accepted over a considerable period of time and was acquiesced in by the courts and legislature. Attorney Mulcahy's interpretation of the statute, although contrary to the position taken by Juneau County, was of short duration and is not entitled to weight. *See Mesar v. Milwaukee Elec. Ry. & Light Co.*, 197 Wis. 578, 581, 222 N.W. 809 (1929); 2A Sutherland Stat. Const. § 48.06 at 58–59 (5th ed. 1992).

circuit court recognized that statutory drafting is an imperfect science and surmised that these statutory provisions were "either poorly drafted, carelessly drafted, [or] carefully drafted language intended to create confusion." Accordingly the circuit court found that Juneau County had a reasonable basis upon which to file the lawsuit to seek clarification of the statute.[8] The court of appeals agreed.

¶ 20. We have examined the text of the two provisions at issue and the context in which they appear in Wis. Stat. § 111.70. Although we have not had the benefit of the English professor's analysis of the grammatical construction of the statutory provisions, we agree with the circuit court that the language is unclear.

¶ 21. The circuit court and the court of appeals disagreed about whether Juneau County's continuation of the action was frivolous considering the materials presented by the Unions. The circuit court concluded that under the circumstances of this case Juneau County's continuation of the suit was frivolous; the court of appeals concluded that it was not.

¶ 22. To determine whether the materials presented by the Unions rendered the continuation of Juneau County's action frivolous, we must assess the materials the Unions submitted.

■

¶ 23. Sources outside the text used to assist in the interpretation of a statute are referred to as extrin-

---

[8] Insightfully, the circuit court observed that clarity and ambiguity are in the eyes of the beholder. The circuit court explained: "As reassurance of the [circuit] Court's view [that the language is ambiguous], we can certainly cite the litigation itself. If it was not ambiguous, we wouldn't have the litigation. But that tends to be the cat chasing its own tail."

sic aids. 2A Sutherland Stat. Const. § 48.01 at 301–02 (5th ed. 1992). Such aids include available background information about the circumstances leading to the enactment of the statute, events surrounding the enactment of the statute and postenactment events. *Id.* This information may be found in legislative, executive, judicial or nongovernmental sources. *Id.* Some extrinsic aids are, of course, more probative than others. For example, ordinarily statements from non-legislative sources do not carry as much probative value as legislative statements. *Ball v. District No. 4*, 117 Wis. 2d 529, 544, 345 N.W.2d 389 (1984).

¶ 24. The Unions submitted extrinsic aids to assist the circuit court in its interpretation of the 1995 amendments. We will examine each in turn to evaluate its interpretive weight.

¶ 25. The Unions submitted several affidavits. One affidavit is by Peter G. Davis, General Counsel for the Wisconsin Employment Relations Commission (WERC), which is charged with administering Wis. Stat. § 111.70, the Municipal Employment Relations Act.

¶ 26. Two affidavits are by Robert W. Lyons, Executive Director of AFSCME District Council 40, whose responsibility it is to track legislation and proposed legislation affecting the collective bargaining rights of the municipal employes represented by the union.

¶ 27. Another affidavit is by Robert Wm. Lang, Director of the Legislative Fiscal Bureau. Both the 1993 and 1995 statutory provisions at issue in this case were part of state budget bills. It is the statutory duty of the Legislative Fiscal Bureau to assist the legislature in its deliberations, and to study and recommend

alternatives to legislation regarding all state budget-ary matters. Wis. Stat. § 13.95(1)(1995–96).

¶ 28. One Lyons affidavit comments on exhibits about legislative intent. This court has previously con-cluded that commentary in an affidavit reflecting the affiant's opinion about legislative intent is not reliable in determining legislative intent. *Ball*, 117 Wis. 2d at 545. Although we do not rely on the affidavits for the affiants' conclusions about legislative intent, we can examine the documents attached to the affidavits to determine whether they contain any information rele-vant to the interpretation of the statutory provisions.

¶ 29. The attachments to the Davis affidavit are documents from the public files of WERC. Most of the documents are communications to WERC from county board members asking WERC to await a decision from the courts before ruling on the applicability of the 1995 amendments to county employes.

¶ 30. Also attached to the Davis and Lyons affi-davits are correspondence and memoranda relating to the positions of the Wisconsin Counties Association and the Unions before WERC and the legislature. These documents reveal that the Wisconsin Counties Association lobbied hard for the repeal of binding inter-est arbitration for county employes and helped to finance Juneau County's litigation. These documents also evidence the long-term disagreement between the parties regarding the use of binding interest arbitra-tion. Although informative in supplying the background for both the amendment and this dispute, these documents provide little, if any, assistance in the determination of legislative intent.[9]

_____

[9] "When, however, a contemporaneous report or other docu-ment from a nonlegislative agency or even a private party forms

644

¶ 31. Also attached to the Davis affidavit is a list of interest arbitration proceedings initiated pursuant to Wis. Stat. § 111.70(4)(cm)6.a. subsequent to the effective date of 1993 Wis. Act 16. According to the Unions, the list demonstrates that between the summer of 1993 (after adoption of the 1993 statutory amendments) and sometime in 1995, WERC, the counties and the Unions interpreted Wis. Stat. § 111.70(4)(cm)6.a. to apply to county employes other than school district professional employes.

¶ 32. This list is not helpful in determining legislative intent because we are not sure what it signifies. The list does not demonstrate that WERC expressly considered and interpreted the 1993 statutory provisions (which are substantially similar to the 1995 statute) as the Unions do. Even if we were certain that WERC interpreted the 1993 statute as the Unions do, any interpretation by WERC was very recent and of short duration and would be given little, if any, weight. *See State ex rel. Parker v. Arendt*, 184 Wis. 2d 668, 699–700, 517 N.W.2d 449 (1994); *Sauk County v. WERC*, 165 Wis. 2d 406, 413–14, 477 N.W.2d 267 (1991).

¶ 33. A number of other documents were attached to the affidavits. Some are reports of the Legislative Fiscal Bureau.[10] Also included is the

---

a vital link in the chain of legislative history of a particular statute, such unofficial report or other document may be used to determine the legislative intent behind the statute." *Ball*, 117 Wis. 2d at 545.

[10] *See, e.g.*, Wisconsin Legislative Fiscal Bureau, *Dispute Resolution Procedures for Municipal Employes* (Informational Paper #83, prepared by Tony Mason, Jan. 1995); Wisconsin Legislative Fiscal Bureau, *1995–97 Wisconsin State Budget*,

Governor's veto message relating to the amendments at issue. We shall discuss the Legislative Fiscal Bureau reports and the Governor's veto message because we consider these documents most relevant to determining legislative intent.[11]

¶ 34. The Fiscal Bureau reports supply a chronology of events leading to the enactment; this chronology assists in determining legislative intent. For example, one report compared the Assembly's and Senate's proposed 1995 amendments to dispute resolution procedures for municipal employes.[12] According to this report, the Assembly would have allowed the binding interest arbitration provision to sunset as

Senate Republican Caucus Amendment, Modifications to Recommendations of the Assembly (June 27, 1995); Wisconsin Legislative Fiscal Bureau Report on the 1995–97 Wisconsin State Budget, Comparative Summary of Assembly Bill 150 Enacted as 1995 Act 27 (October 1995); Wisconsin Legislative Fiscal Bureau, Comparative Summary of Budget Provisions Enacted as 1995 Acts 27 and 113 (December 1995).

[11] Another attachment is the pre-final report of the Council on Municipal Collective Bargaining, which the legislature mandated in 1993 Wis. Act 16 § 2213p for the purpose of recommending to the legislature proposed changes to Wis. Stat. § 111.70(4)(cm) and (7m) following the scheduled sunset of binding interest arbitration on July 1, 1996.

This court has given interpretive weight to the comments of legislatively created advisory committees. See, e.g., Green Bay Packaging, Inc. v. DILHR, 72 Wis. 2d 26, 34–35, 240 N.W.2d 422 (1976). The Council's report is, however, clearly designated as a "PRE-FINAL REPORT" and is marked "NOT FOR SUBMISSION TO THE LEGISLATURE." We therefore do not consider it helpful in determining legislative intent.

[12] Legislative Fiscal Bureau Report on the 1995–97 Wisconsin State Budget, Comparative Summary of Assembly Bill 150 Enacted as 1995 Act 27 (October 1995).

scheduled on July 1, 1996, while the Senate would have repealed the sunset and provided for the continuation of binding interest arbitration. Robert Wm. Lang, Director of the Legislative Fiscal Bureau, states in his affidavit that he and his staff worked closely with the legislature in the adoption of the 1993 and 1995 state budget bills and provided drafting instructions to effect the Senate's position to delete the Assembly's proposed amendment to remove nonprotective employes from coverage of binding interest arbitration.

¶ 35. Several of the Legislative Fiscal Bureau reports contain statements supporting the Unions' position that the legislature revised the dispute resolution procedures applicable to school district professional employes but did not intend to exclude county employes from binding interest arbitration. State Director Lang's affidavit interprets the Bureau's documents prepared under his supervision as supporting the Unions' position about the effect of the 1993 and 1995 amendments.

¶ 36. Reports prepared by the Legislative Fiscal Bureau are "official report[s] of a legislatively created committee" and are "clearly valid evidence of legislative intent." *Ball*, 117 Wis. 2d at 543. *See also State v. Konrath*, 218 Wis. 2d 290, 308–09, 577 N.W. 2d 601 (1998); *In re Brandon S.S.*, 179 Wis. 2d 114, 153 n.36, 507 N.W.2d 94 (1993).[13]

---

[13] The court of appeals viewed many of the documents as not "legislative history, as that term is usually understood, because they were prepared *after* the enactment of the 1993 amendments to § 111.70(4) (cm)6., STATS., and because there is no evidence they were considered by the legislature prior to or during the course of the enactment of 1993 Wis. Act 16 on August 10, 1993. Nevertheless, they are aids commonly used in

¶ 37. Not all of the Legislative Fiscal Bureau reports were available to the legislature prior to adoption of the 1995 amendments; some were issued after the 1995 amendments were adopted. But even Legislative Fiscal Bureau reports not available to the legislature prior to enactment of a statutory provision are official interpretations by a legislative agency that worked with the legislature during the adoption of the statutory provisions in issue. Such post-enactment legislative agency reports may therefore be of aid in determining legislative intent, although they may be less persuasive than reports issued prior to enactment.

¶ 38. We conclude that several of the Legislative Fiscal Bureau reports attached to the affidavits in this case are competent evidence of legislative intent and support the Unions' interpretation of the statute.

¶ 39. The Governor's veto message regarding the 1995 binding interest arbitration provisions explained that the Governor would not veto the repeal of the sunset of the binding interest arbitration provision as applied to counties, although on principle he supported a sunset. The Governor's message further explained that he could not repeal binding interest arbitration for county employes because he wanted to retain the special provisions for school district professional employes. The veto message stated:

> Although I support a sunset of this law, I am placed in the unfortunate position of not being able to veto

statutory construction." *Juneau County*, 216 Wis. 2d at 296 (emphasis in original). We note that the declaratory judgment action sought interpretation of the 1995 amendments, not the 1993 enactment, and that several documents submitted by the Unions were prepared before the enactment of the 1995 amendments and were available for legislative consideration.

its repeal without also vetoing the repeal of the sunset of the qualified economic offer (QEO) provisions of the mediation-arbitration law that currently apply to schools. I believe maintaining the QEO provisions for schools is critical to ensuring that schools can control spending. However, since the mediation-arbitration law will still apply to counties, it will continue to be difficult for them to manage their employe compensation costs.[14]

¶ 40. The court has, in prior cases, considered a governor's veto message as part of the legislative history and as evidence of legislative intent.[15] It is apparent from this particular Governor's veto message that the Governor interpreted Wis. Stat. § 111.70(4)(cm)6.a. as applying binding interest arbitration to county employes and a different system to school district professional employes. The Governor's veto message thus supports the Unions' interpretation of the 1995 amendments.

¶ 41. Juneau County argues that none of the materials offered by the Unions constitutes competent evidence of legislative intent. As evidenced by our previous discussion, Juneau County is in error on this point. Several of the proffered Legislative Fiscal Bureau reports, as well as the Governor's veto message, are competent evidence of legislative intent and support the Unions' interpretation of the statute.

---

[14] Governor's Veto Message, *Assembly J.*, July 27, 1995 at 411.

[15] *See, e.g., Wisconsin Patients Compensation Fund v. St. Paul Fire & Marine Ins. Co.*, 116 Wis. 2d 537, 546–47, 342 N.W.2d 693 (1984); *American Med. Transp. of Wisconsin, Inc. v. Curtis-Universal, Inc.*, 154 Wis. 2d 135, 143 n.5, 452 N.W.2d 575 (1990).

¶ 42. Juneau County's view of what a court may consider in interpreting legislative intent is too narrow. A court may consider a broad range of textual and historical evidence when it interprets statutes. As we have written previously, under some circumstances this court has considered evidence of legislative intent from nonlegislative committees and other sources. *Ball*, 117 Wis. 2d at 544. We agree, however, with Juneau County that courts should be careful in what they deem acceptable as evidence of legislative intent.

¶ 43. Balanced against the Unions' submissions on legislative intent, Juneau County presented no evidence to support its interpretation. Accordingly, the Unions ask us to award them attorney fees for Juneau County's frivolous action.

¶ 44. In determining whether an action is frivolous a court should keep in mind a significant purpose of Wis. Stat. § 814.025, namely, to help maintain the integrity of the judicial system and the legal profession. *Sommer*, 99 Wis. 2d at 799. People should not be inconvenienced and their resources and court resources should not be wasted by frivolous actions. At the same time, litigants and lawyers must have the opportunity to espouse legal principles in good faith without fear of personal loss.

¶ 45. A determination of frivolousness is "an especially delicate area." *Radlein*, 117 Wis. 2d at 613. A court should be cautious in declaring an action frivolous because the court does not want to stifle "the ingenuity, foresightedness and competency of the bar." *Id.*

¶ 46. The court has stated that doubts about frivolousness should be resolved in favor of the litigant or attorney, "because it is only when *no* reasonable basis exists for a claim or defense that frivolousness exists."

*In re Estate of Bilsie*, 100 Wis. 2d at 350. *See also Atkinson v. Mentzel*, 211 Wis. 2d at 648; *Stern*, 185 Wis. 2d at 235. Thus we must resolve any doubts about whether Juneau County or its attorneys knew or should have known that there was no reasonable basis in law or equity for its action in favor of Juneau County.

¶ 47. This is a close case. The ambiguity of the statute supports Juneau County seeking declaratory relief. The extrinsic aids support the Unions' position, and no extrinsic aid supports Juneau County's position. Juneau County and its attorneys contended that none of the proffered legislative history was competent evidence of legislative intent. This error contributed to Juneau County's seeking and continuing to seek a judicial determination. That Juneau County's views about the extrinsic aids submitted and the 1995 statute have not been accepted by either the circuit court or this court does not render the action frivolous. *See Stern*, 185 Wis. 2d at 243.

¶ 48. The Legislative Fiscal Bureau's reports and the Governor's veto message ultimately prove persuasive on legislative intent, even though these documents do not explain the source of and the meaning of the ambiguous statutory language. As a result, the reader continues to be somewhat perplexed about the text of the statute.

¶ 49. Upon considering all the factors and resolving doubts about frivolousness in favor of Juneau County, we conclude that Juneau County's position that a judicial determination was needed was not an unreasonable conclusion. Although persuasive, these extrinsic aids do not conclusively tie the legislative intent to the statutory language at issue in this case.

On final analysis, we cannot say that *no* reasonable basis existed for Juneau County's action.

¶ 50. For the reasons stated herein, we hold that Juneau County and its attorneys did not commence or continue a frivolous claim within the meaning of Wis. Stat. § 814.025(3)(b). Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.