Hunt Club Condominiums, Inc.,
Plaintiff-Respondent,†

v.

Mac-Gray Services, Inc., Defendant-Appellant.

Court of Appeals

*No. 2005AP1674.·Submitted on briefs January 19, 2006.*
*—Decided July 27, 2006.*

**2006 WI App 167**

(Also reported in 721 N.W.2d 117.)

---

† Petition to review denied 10/10/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory P. Seibold* of *Murphy Desmond, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edward A. Corcoran* and *Lisa M. Pardon* of *Brennan, Steil & Basting, S.C.*, Madison.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J. Hunt Club Equities, LLC, the owner of an apartment complex, entered into a ten-year lease with Mac-Gray Services, Inc., under which Mac-Gray placed coin-operated laundry machines in the apartment complex for use by tenants. About two years after entering into the laundry room lease with Mac-Gray, the owner of the apartments converted them to condominiums. The Hunt Club Con-

dominium Association thereafter assumed control over the condominium common areas and sought to evict Mac-Gray from the space it had leased from the prior owner of the apartments for its laundry machines. The circuit court granted the Association a judgment evicting Mac-Gray from the premises.

¶ 2. Mac-Gray claims the circuit court erred in concluding that the Association was empowered by WIS. STAT. § 703.35 (2003–04)[1] to terminate the Mac-Gray lease because it was a "contract or lease to which a [condominium] declarant . . . is a party." *See id.* We agree with Mac-Gray that the lease in question does not fall within that category of terminable contracts. The Association could not, therefore, terminate the lease for the reason relied on by the circuit court. Accordingly, we reverse the judgment of eviction and remand for further proceedings to determine whether other grounds may exist that would entitle the Association to evict Mac-Gray from the premises.

## BACKGROUND

¶ 3. Hunt Club Equities, LLC, the owner of an apartment complex located in the Town of Madison, entered into a ten-year lease with Mac-Gray Services, Inc., effective as of April 1, 2001. The lease granted Mac-Gray the right to install, operate and maintain "pay per use laundry equipment" at specified locations within the complex. Two years later, the owner of the apartments filed a "Declaration of Condominium of Hunt Club Condominiums," converting the property to the condominium form of ownership. In January 2004, Hunt Club Condominiums, Inc., the owners' association

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

identified in the condominium declaration ("the Association"), filed a report naming its officers and directors.

¶ 4. The Association's property manager sent a letter on December 14, 2004, to Mac-Gray notifying it that the Association was "cancel[ing] the laundry contract by and between Hunt Club and Mac[-]Gray as of March 31, 2005." The letter specified that the notice of cancellation was sent pursuant to WIS. STAT. § 703.35, which authorizes condominium associations to cancel certain contracts on ninety days' notice. On March 9, 2005, counsel for the Association sent Mac-Gray a letter informing it that its lease "terminates on March 31, 2005" pursuant to the earlier notice. Counsel's letter also cited the following authority for terminating the lease:

> Under WIS. STAT. § 703.35, the Hunt Club Condominiums, Inc., may terminate this lease agreement on numerous grounds. This lease is being cancelled because: (1) it is a "lease to which a declarant or any person affiliated with the declarant is a party"; (2) the lease "is not bona fide" because it was not recorded or assigned to the Hunt Club Condominiums, Inc.; and (3) the lease "was not commercially reasonable to unit owners when entered into under the circumstances then prevailing."

¶ 5. The Association subsequently filed an eviction action and Mac-Gray moved to dismiss. The parties' arguments and the circuit court's disposition largely rested on the interpretation and application to the present facts of WIS. STAT. § 703.35, which provides as follows:

> If entered into before the officers elected by the unit owners under s. 703.10 take office, any management contract, employment contract, lease of recre-

785

ational or parking areas or facilities, *any contract or lease to which a declarant or any person affiliated with the declarant is a party* and any contract or lease which is not bona fide or which was not commercially reasonable to unit owners when entered into under the circumstances then prevailing, may be terminated by the association or its executive board at any time without penalty upon not less than 90 days' notice to the other party thereto. This section does not apply to any lease the termination of which would terminate the condominium.

Section 703.35 (emphasis added).

¶ 6. The parties and the circuit court agreed that the lease of space for the laundry facilities did not qualify as a "management contract, employment contract," or a "lease of recreational or parking areas or facilities." *See id.* The court concluded, however, that the Association had the right to terminate the lease and to evict Mac-Gray because the lease in question fell within the second category of terminable contracts under WIS. STAT. § 703.35: it was "entered into before the officers elected by the unit owners . . . [took] office," and it was a "contract or lease to which a declarant . . . is a party." *See id.* Because the court concluded the lease was terminable on that basis, it did not address the third category of terminable contracts, those which are "not bona fide or which w[ere] not commercially reasonable to unit owners when entered into under the circumstances then prevailing." *See id.* The circuit court also deemed it unnecessary to resolve the question whether the Association was bound by the lease under WIS. STAT. § 704.09(3) as the "successor in interest" to Hunt Club Equities, LLC, as Mac-Gray maintained.

¶ 7. The court entered a judgment entitling the Association to a writ of restitution on July 1, 2005. Mac-Gray appeals, having posted bond and obtained a stay of the eviction during the pendency of the appeal. *See* WIS. STAT. § 799.445.[2]

## ANALYSIS

¶ 8. The dispute between Mac-Gray and the Association centers on the interpretation and application of WIS. STAT. § 703.35 to facts that are largely undisputed. Whether § 703.35 authorizes the Association to terminate the Mac-Gray lease is a question of law that we decide de novo. *See Stockbridge Sch. Dist. v. Department of Pub. Instruction*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996) ("The interpretation of a statute presents a question of law that this court reviews de novo.").

¶ 9. When interpreting a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or

---

[2] The Association obtained the appealed judgment of eviction under the procedures set forth in WIS. STAT. ch. 799. Mac-Gray's appeal was therefore originally designated for decision by a single judge. *See* WIS. STAT. § 752.31(2)(a). On Mac-Gray's motion, the chief judge ordered the appeal to be decided by a three-judge panel. *See* WIS. STAT. § 809.41.

closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is unambiguous—that is, there is only one reasonable meaning—then we apply this plain meaning. *Id.*, ¶ 46.

¶ 10. Under WIS. STAT. § 703.35, which we have quoted above in the Background section of this opinion, a condominium association may terminate an existing lease on ninety days' notice to the tenant under certain circumstances. First, the lease must have been "entered into before the officers [of the condominium association] elected by the unit owners . . . take office." Second, the lease or contract must fall within one of three categories specified in the statute: (1) a "management contract, employment contract, lease of recreational or parking areas or facilities"; (2) "any contract or lease to which a declarant or any person affiliated with the declarant is a party"; or (3) "any contract or lease which is not bona fide or which was not commercially reasonable to unit owners when entered into under the circumstances then prevailing." *Id.*

■

¶ 11. As we have noted, there is no dispute that the Mac-Gray lease does not fall within the first category of terminable contracts or leases. As we have also explained, the circuit court concluded that the lease came within the second category. The court reasoned that, because Hunt Club Equities, LLC, was the declarant of the condominium and was the party who entered into the lease with Mac-Gray, the lease is terminable as one "to which a declarant . . . is a party."

*See* Wis. Stat. § 703.35.[3] We conclude, however, that the court erred in this regard because its interpretation does not comport with the plain language of the statute. We conclude the statute plainly requires that the "declarant or any person affiliated with the declarant" must, at the time an association seeks to terminate a lease or contract, then be a party to the lease or contract to whom the association is contractually obligated.

¶ 12. Our conclusion derives primarily from the legislature's choice of the present tense to describe a declarant's participation in this category of terminable contracts. An association may terminate "any contract or lease to which a declarant . . . *is* a party." *See* Wis. Stat. § 703.35 (emphasis added). Thus, the statute plainly applies to only those contracts and leases to which the declarant (or an affiliate) *is* a party at the time the association wishes to terminate. Any other reading of this language would be unreasonable. The only contracts or leases that an association has any reason to terminate are those which impose contractual obligations on the association that benefit another party or parties to the contract or lease. For the first and third categories of terminable contracts, the identity of the party opposite the association on the lease or contract is irrelevant. For the second category, however, the object and nature of the contract are irrelevant, but the identity of the opposite party is key—it must be the declarant or an entity affiliated with the declarant that is then a beneficiary of the association's contractual obligations.

---

[3] A "declarant" is "any owner who subjects his or her property to a condominium declaration established under this chapter." Wis. Stat. § 703.02(7).

¶ 13. We thus conclude the plain language of Wɪs. Sᴛᴀᴛ. § 703.35 requires that, to be terminable under the provision at issue, a contract must presently bind the Association contractually to the person or entity that declared the condominium (or to some person or entity "affiliated with" the declarant). The Mac-Gray lease does not meet this description. Unless it is terminable by or ineffective against the Association for some other reason, the lease in question contractually obligates the Association, as landlord, to provide certain space to a tenant, Mac-Gray, in which the latter may install, operate and maintain its laundry equipment. The condominium declarant, Hunt Club Equities, LLC, although once a party to the lease as the original landlord, is no longer a party to the lease because it no longer owns or occupies the leased premises. The declarant's only relationship to the Mac-Gray lease is as the Association's predecessor, not as a party presently having any contractual rights or obligations vis-à-vis the Association.[4]

¶ 14. Not only do we view the foregoing interpretation as being compelled by the statute's language, the contrary interpretation—that advocated by the Asso-

---

[4] We do not wish to suggest that Hunt Club Equities, LLC, if it still exists, has no potential liability to Mac-Gray stemming from the covenants in the lease if it is ultimately determined that Association is not obligated to honor the lease. Hunt Club Equities, LLC, is not a party to the present eviction action, however, and we need not consider any potential claims the present parties may have against it. The relevant point is that Hunt Club Equities, LLC, the declarant, is not presently deriving any benefits which the Association is contractually obligated to confer. The party in that position, opposite the Association on the lease, is Mac-Gray, which is not affiliated in any way with Hunt Club Equities, LLC.

ciation and adopted by the circuit court—renders much of the remaining language in the statute meaningless. The Association would have us interpret the pertinent language of Wis. Stat. § 703.35 as if the word "is" meant "was," such that *any* contract the declarant had entered into at any time before or after declaring the condominium, in which the Association has now succeeded to the declarant's interest, is terminable at the discretion of the Association.[5] If that is the meaning of the language at issue, it would have been unnecessary for the legislature to identify certain specific types of contracts or leases (management or employment contracts, leases of recreational or parking areas), and those lacking certain attributes (bona fides or commercial reasonableness when entered into), as terminable under the statute. The fact that the legislature specified certain contract subjects and characteristics as triggering the terminability provisions provides strong contextual support for the conclusion that the second category of terminable contracts (those to which the declarant or an affiliate is a party) is not all inclusive but applies to

---

[5] We note that Mac-Gray argues that, even if the second category of terminable contracts includes those to which a declarant was previously a party, it can apply to only those contracts the declarant entered into *after* declaring a condominium, not to those, like its lease, which predate the condominium declaration. Because we conclude the second category includes only those contracts or leases in which a condominium association finds itself presently contractually bound to the declarant or an affiliate of the declarant, we do not address whether only those contracts that postdate the condominium declaration are terminable under this provision. We note, however, that Mac-Gray's interpretation would allow an owner/developer to circumvent Wis. Stat. § 703.35 by entering into self-serving contracts with affiliated entities on the eve of filing a condominium declaration.

only those contracts or leases where the declarant or an affiliate remains a party to which the association is contractually obligated.

¶ 15. We also agree with Mac-Gray that the Association's proffered interpretation would lead to unreasonable results. Commercial tenants or vendors could well be discouraged from entering into commercially reasonable, "arms-length" contracts with owners or developers of multi-family residential complexes because of the prospect that their contracts or leases might be summarily terminated at the whim of an association board following conversion to a condominium. As we discuss below, provisions such as WIS. STAT. § 703.35 have become a part of state condominium laws in order to curtail potential abuses by self-dealing condominium declarants, not to punish independent third parties having legitimate contractual or leasehold interests in properties that become condominiums.

¶ 16. We are not to consult "extrinsic" sources as aids to interpreting a statute unless we find ambiguity in the statute's language. See Kalal, 271 Wis. 2d 633, ¶ 46. After determining the plain meaning of statutory language, however, we may look beyond it for confirmation of the correctness of our interpretation. See id., ¶ 51 (noting that "legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation"). When a Wisconsin statute has a counterpart among the uniform acts promulgated under the auspices of the National Conference of Commissioners on Uniform State Laws, we may consider the official and published comments of the drafters of the uniform law. See State v. Mueller, 201 Wis. 2d 121, 141, 549 N.W.2d 455 (Ct. App. 1996). The provision of the Uniform Condominium Act of 1977 (UCA) that corresponds to

Wis. Stat. § 703.35, which was enacted in 1977 Wis. Laws, ch. 407, reads in relevant part as follows:

> If entered into before the executive board elected by the unit owners pursuant to Section 3–103(f) takes offices, (i) any management contract, employment contract, or lease of recreational or parking areas or facilities, (ii) *any other contract or lease between the association and a declarant or an affiliate of a declarant,* or (iii) any contract or lease that is not bona fide or was unconscionable to the unit owners at the time entered into under the circumstances then prevailing, may be terminated without penalty by the association at any time after the executive board elected by the unit owners pursuant to Section 3–103(f) takes office upon not less than (90) days' notice to the other party . . . .

UCA § 3–105 (emphasis added).[6]

---

[6] The legislative history of Wis. Stat. ch. 703 is described in Joseph W. Boucher et al., Wisconsin Condominium Law Handbook § 1.4 (1994). The Handbook's account includes the following:

> Wisconsin's first condominium statute was enacted in 1963 and was modeled after the FHA Model Condominium Statute of 1961. It existed substantially unchanged until it was entirely replaced by the current statute, which became effective on August 1, 1978. *See* 1977 Wis. Laws, ch. 407, § 2.
>
> . . . .
>
> Part of the impetus for replacing the 1963 statute was to overcome the shortcomings of the FHA Model Condominium Statute, which was designed primarily for high-rise developments and did not lend itself well to the cluster or duplex developments that were popular in Wisconsin.
>
> . . . .
>
> The Uniform Condominium Act, originally prepared by the National Conference of Commissioners on Uniform State Laws in 1977, approved by the American Bar Association in 1978, and

¶ 17. The official comment accompanying UCA § 3–105 explains that the "section deals with a common problem in the development of condominium projects: the temptation on the part of the developer, while in control of the association, to enter into, on behalf of the association, long-term contracts and leases with himself or with an affiliated entity." *Id.*, cmt. 1. The comment goes on to say that the section addresses the developer-self-dealing problem by authorizing "the termination of certain contracts and leases made during a period of declarant control," one category of which are "contracts or leases made by a declarant with himself or with an affiliated entity." *Id.*, cmts. 1, 2. Finally, the comment makes clear that this category of terminable contracts or leases includes only those where the association finds itself contractually bound to the declarant or an entity affiliated with the declarant, and does *not* extend to all contracts the declarant may have entered into with other, unaffiliated entities:

> [A] statutorily-sanctioned right of cancellation should not be applicable to all contracts or leases which a declarant may enter into in the course of developing a condominium project. For example, a commercial tenant would not be willing to invest substantial amounts in equipment and other improvements for the operation of his business if the lease could unilaterally be cancelled by the association. Accordingly, this section

revised substantially in 1980, has been adopted in a number of states. Certain other states, including Wisconsin, have adopted only portions of the Uniform Condominium Act.

The HANDBOOK does not specify which "portions" of the Uniform Condominium Act were adopted in Wisconsin. It seems clear, however, given the similarity in wording, that WIS. STAT. § 703.35 is patterned after § 3–105 of the Uniform Act. (*See also* footnote 7, below.)

provides that . . ., upon the expiration of any period of declarant control, the association may terminate without penalty, any "critical" contract (*i.e.,* any management contract, employment contract, or lease of recreational or parking areas or facilities) entered into during a period of declarant control, any contract or lease to which the declarant or an affiliate of the declarant is a party, or any contract or lease previously entered into by the declarant which is not *bona fide* or which was unconscionable to the unit owners at the time entered into under the circumstances then prevailing.

UCA § 3–105, cmt. 2.

¶ 18. The Association would have us ignore the UCA commentary because of the difference between the language in UCA § 3–105 and that in WIS. STAT. § 703.35 describing the contractual category at issue in this case. The uniform act renders terminable "any other contract or lease *between the association and a declarant* or an affiliate of a declarant," UCA § 3–105 (emphasis added), while, as we have discussed, the Wisconsin statute refers to "any contract or lease to which a declarant or any person affiliated with the declarant is a party," § 703.35. The Association acknowledges that "the Uniform Condominium Act does seemingly limit leases to be rejected to those involving self-dealing by the declarant." It argues, however, that "§ 703.35 is certainly broader. It applies to any contract or lease the declarant enters into."

¶ 19. The Association, however, provides no legislative history or other authority to support its claim that the slight change in language is evidence of the Wisconsin legislature's intent via WIS. STAT. § 703.35 to render terminable contracts and leases beyond those addressed by UCA § 3–105. Instead, the Association

simply asserts that "it would be totally improper" for this court to assume that the drafters of the Wisconsin Condominium Act had similar concerns in mind as the drafters of the Uniform Condominium Act. We disagree.

¶ 20. We again emphasize that we are not looking to an extrinsic exposition of legislative intent to ascertain the meaning of an ambiguous statute. We conclude, as discussed above, that the statutory language at issue plainly refers to only those contracts or leases in which a condominium association, as one party to a contract or lease, finds itself currently bound to the declarant or an affiliated entity as the other contracting party. We have turned to UCA § 3–105 and its accompanying comments only to see whether it might confirm our plain-meaning interpretation.

¶ 21. Having done so, we conclude the comments accompanying UCA § 3–105 are a valid indicator of the Wisconsin Legislature's intended meaning in WIS. STAT. § 703.35 because (1) the wording of the relevant provision in the uniform act is very similar, although admittedly not identical, to the Wisconsin statute, and (2) § 703.35 was enacted as part of a comprehensive revision to Wisconsin's condominium statutes at approximately the same time the UCA was developed and promulgated. In the absence of any evidence of legislative intent to enact a contract-termination provision in Wisconsin that differs in scope from that in the uniform act, we are satisfied that the UCA and its comments confirm our interpretation of § 703.35.[7]

---

[7] We note that the supreme court in *ABKA Ltd. Partnership v. DNR*, 2002 WI 106, 255 Wis. 2d 486, 648 N.W.2d 854, compared the wording of a definition in WIS. STAT. ch. 703 to that in the UCA and found considerable significance in the fact that the definitions were quite different. *Id.*, ¶¶ 42–48. The court noted that the Wisconsin definition at issue in *ABKA* was

¶ 22. Finally, we note that a practice guide for Wisconsin lawyers published by the State Bar of Wisconsin advises readers that WIS. STAT. § 703.35 "is directed against so-called sweetheart contracts—contracts with affiliates of the declarant that are advantageous or remunerative for the declarant but are not in the best interest of the association." JOSEPH W. BOUCHER ET AL., WISCONSIN CONDOMINIUM LAW HANDBOOK § 1.35, p.1–23 (1994); *see also id.*, § 5.15, p. 5–9, 10. We recognize, of course, that a pronouncement of legislative purpose by the authors of a State Bar practice guide published some sixteen years after enactment of § 703.35 is far from authoritative as to what those who drafted, debated and enacted the legislation had in mind. The quoted passage from the HANDBOOK serves, however, to confirm our conclusion regarding the scope of § 703.35, in that our interpretation is apparently shared by those who practice in the field of condominium law and who possess sufficient expertise on the topic to be called upon to advise other lawyers regarding it. *See, e.g., Seider v. O'Connell*, 2000 WI 76, ¶ 53, 236 Wis. 2d 211, 612 N.W.2d 659 (noting that "extrinsic aids" to statutory interpretation can include "information generated after the statute's passage"); *Juneau County v. Courthouse Employees, Local 1312*, 221 Wis. 2d 630, 641 n.7, 642–43, 585 N.W.2d 587 (1998) (noting that the "interpretation of a statute by people affected by it can be given weight"; that information from "nongovernmental sources" may be consulted; but that

not significantly altered from its 1963 version when WIS. STAT. ch. 703 was repealed and recreated in 1977 (see partial history of statute in footnote 6, above). *Id.*, ¶¶ 46–47. In contrast to the circumstance in *ABKA*, the language we are concerned with in this appeal closely parallels that in UCA § 3–105, and WIS. STAT. § 703.35 did not exist prior to 1977 Wis. Laws, ch. 407.

"statements from non-legislative sources do not carry as much probative value as legislative statements" regarding statutory intent).

¶ 23. In summary, we conclude the plain language of Wis. Stat. § 703.35 permits the Association to terminate specific types of contracts or leases (i.e., those involving management, employment and recreational or parking areas or facilities), as well as contracts or leases that are not "bona fide" or that were not "commercially reasonable to unit owners when entered into," *id.*, regardless of the identity of the party to which the Association is contractually bound. The only contracts or leases other than those coming within one of these two categories that the Association may terminate under § 703.35 are those under which the Association finds itself contractually bound to the declarant or an entity affiliated with the declarant. The Mac-Gray lease is not such a contract or lease.

¶ 24. Mac-Gray also makes several arguments based on Wis. Stat. § 704.09(3) and our unpublished decision in *Walsh Apartments, LLC v. Mac-Gray Co., Inc.*, No. 01–0330–FT, unpublished slip op. (Wis. Ct. App. Aug. 30, 2001). Basically, Mac-Gray claims that § 704.09(3) establishes that the Association is obligated to honor the lease because the Association is the "successor in interest" to Hunt Club Equities, LLC, and, further, that the litigation in *Walsh* does not preclude it from relying on § 704.09(3) in this case because the issue was not litigated in *Walsh*. The circuit court did not reach these questions because of its conclusion that the Association was empowered to terminate the lease under Wis. Stat. § 703.35. We also do not reach these issues and conclude here only that the Mac-Gray lease does not come within the category of terminable con-

tracts relied on by the circuit court. The Association may be able to establish on remand that the Mac-Gray lease is either not "bona fide or . . . was not commercially reasonable to unit owners when entered into under the circumstances then prevailing." Section 703.35. It is therefore possible that the circuit court may again conclude that, for another reason, the Association is empowered to terminate the Mac-Gray lease under § 703.35.

¶ 25. If, however, the circuit court concludes on remand that the Association may not terminate the lease under Wis. Stat. § 703.35, the court may then consider, on the facts it finds or to which the parties agree, whether the Association is bound by the Mac-Gray lease. Facts or factors that may then become relevant, among others, include the following: whether unit owners were informed of the Mac-Gray lease when they purchased their units or were otherwise aware of its existence; whether or when the Mac-Gray lease was recorded; whether Hunt Club Equities, LLC, executed and delivered any formal assignment of the lease to the Association; and whether (or how) Wis. Stat. § 704.09(3) applies to the present facts. Although both parties make brief arguments regarding several of these issues, neither the present state of the record nor the parties' arguments to this court are sufficient to permit us to address any issues beyond the one we decide. Rather, it will be the circuit court's duty on remand to conduct such further proceedings as it may deem necessary to resolve the remaining issues the parties have raised regarding the disputed lease.[8]

---

[8] Although, as noted above, we do not address any issue in this opinion other than whether the Mac-Gray lease is termi-

## CONCLUSION

¶ 26. For the reasons discussed above, we reverse the appealed judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

nable under WIS. STAT. § 703.35 as a lease "to which a declarant . . . is a party," we do not believe our prior decision in *Walsh Apartments, LLC v. Mac-Gray Co., Inc.*, No. 01–0330–FT, unpublished slip op. (Wis. Ct. App. Aug. 30, 2001), will be particularly helpful in resolving the present dispute. First, because it is an unpublished decision of this court, it bears no precedential value. *See* WIS. STAT. RULE 809.23(3). Second, we agree with Mac-Gray that no issue pertaining to WIS. STAT. § 704.09(3) was litigated or decided in *Walsh*. Finally, we note that the present case involves quite different facts than those in *Walsh*, the most prominent difference being that, here, the dispute is between Mac-Gray and a condominium association following a condominium conversion, while the dispute in *Walsh* was between Mac-Gray and an entity that purchased an apartment complex in an arms-length commercial transaction.

We also note our agreement with Mac-Gray that WIS. STAT. § 704.09(3) is not inapplicable here solely on the grounds that Mac-Gray may have a cause of action against Hunt Club Equities, LLC, for failing to fulfill its obligations under the lease. The fact that Mac-Gray can sue Hunt Club Equities, LLC, for allegedly breaching some provisions of the lease does not render all of the lease provisions "personal to the original parties," *see* § 704.09(3), as the Association maintains in this appeal.